990 F.Supp. 769 (1998)
David R. LEISURE, Petitioner,
v.
Michael BOWERSOX,[1] Superintendent, Potosi Correctional Center, and Jeremiah "Jay" Nixon, Attorney General of the State of Missouri, Respondents.
No. 4:92CV2193-DJS.
United States District Court, E.D. Missouri, Eastern Division.
January 13, 1998.
*770 *771 *772 *773 *774 *775 *776 *777 *778 *779 Cordell P. Schulten, Sr., Belz and Jones, St. Louis, MO, Barry A. Short, Lewis and Rice, St. Louis, MO, John W. Simon, Inglish and Monaco, P.C., Jefferson City, MO, David Leisure, Pro se, for Petitioner.
Stacy L. Anderson, Asst. Atty. Gen., Jefferson City, MO, Millie E. Aulbur, Jefferson City, MO, for Respondents.

MEMORANDUM AND ORDER
STOHR, District Judge.

I. INTRODUCTION
This matter is before the Court on David R. Leisure's amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. On April 7, 1987, in the Circuit Court of the City of St. Louis, Missouri, a jury found petitioner guilty of capital murder. On April 9, 1987, in accordance with the jury's verdict, petitioner was sentenced to death. On direct appeal, the Missouri Supreme Court affirmed the conviction and sentence. State v. Leisure, 749 S.W.2d 366 (Mo. banc 1988). Thereafter, in state court, pursuant to Rule 29.15 of the Missouri Rules of Court, petitioner filed for postconviction relief seeking to vacate his sentence. Petitioner's amended Rule 29.15 motion] was denied after an evidentiary hearing. The Missouri Supreme Court affirmed the denial of postconviction relief. Leisure v. State, 828 S.W.2d 872 (Mo. banc 1992).
Petitioner filed his original pro se petition for a writ of habeas corpus in this Court on October 30, 1992. The Court appointed counsel to represent petitioner and on August 31, 1993, petitioner filed his amended petition. Subject to further consideration upon the examination of the merits of the amended petition, the Court denied petitioner's request for an evidentiary hearing and petitioner's ex parte request for leave to conduct a psychiatric examination.

II. BACKGROUND
To resolve petitioner's claims, an understanding of the complex factual background of this case is necessary. On direct appeal, the Missouri Supreme Court summarized the facts as follows:
According to the record, the murder in question was the product of simultaneous power struggles within an organized crime entity described as being composed of persons of Syrian and Lebanese descent within *780 St. Louis and Local 110 of the Laborers Union, which was headed by the victim, James A. Michaels, Sr.; Michaels was the reputed head of "the Syrians." The record further reveals that a second, competing organized crime unit existed in St. Louis known as "the Italians," headed by Anthony Giordano.
In early 1977, Ray Massud promised Anthony Leisure, appellant's cousin, that he would succeed Massud as Local 110's business manager. While in the hospital with a terminal illness, Massud changed his mind, asking Anthony Leisure to accept the job of assistant business manager and to allow John Massud, his son, to serve as business manager of the union. Anthony Leisure agreed. On June 30, 1977, after Ray Massud's death, the appointments were made to the Union positions in accordance with the agreement. Under the "terms" of the agreement, Leisure would control the hiring and firing of union officers; John Massud would operate the union office.
John Massud began to hire Union officers without consulting Anthony Leisure. Moreover, Massud hired Vince Giordano, nephew of Anthony Giordano, as a union organizer. Mike Trupiano, another nephew of Anthony Giordano, became Union president in May of 1979, with Massud's blessing and, again, without Anthony Leisure's consent.
Angered by Massud's breach of their agreement and his resulting loss of power within the union, Anthony Leisure met with his brother Paul, Ronald Broderick, John Ramo, Charles Loewe and appellant to consider whether John Massud should be murdered for violating the agreement. The group reached no decision. The Leisures feared Massud's political ties in St. Louis City politics.
Later, Massud complaining that the union payroll was too high, announced that he planned to fire Broderick. Broderick was the only union officer Anthony Leisure had appointed. The Leisures, including appellant, Broderick, Ramo and a Fred Prator [sic], convened another meeting. Again, the subject was the preservation of Anthony's power within the union. The group again thought it unwise to kill Massud for the reasons earlier stated; nor did they wish to start a war with the Italians by killing Trupiano. They selected James Michaels, Sr., as their victim. Michaels' death would enhance the Leisures' position among the Syrians. It would also send a strong message to the union leadership. The Leisures also believed that Michaels had protected the murderer of appellant's older brother, Richard.
After an unsuccessful attempt to shotgun Michaels at a St. Louis restaurant, appellant and his coconspirators decided to bomb Michaels' car. On September 4, 1980, appellant and Ramo stole a car that matched the make and model of Michaels' car, and practiced planting a bomb. Appellant followed Michaels around the city to learn of his habitual movements.
On September 17, 1980, appellant spotted Michaels' car in the parking lot of St. Raymond's Catholic Church. The participants in the plan to kill Michaels moved into action. Anthony Leisure, Broderick and Ramo picked up a van belonging to Broderick's son. They drove the van to another location, where they retrieved the bomb and joined appellant. Prepared now to kill, they drove to St. Raymond's Church, parking the van next to the victim's car. Appellant slid under Michaels' car and attached the bomb; the quartet drove the van to a strategic place where they could see Michaels return to his car. The victim came out of the church with his grandson, James Michaels, III, a Local 110 union organizer. The senior Michaels entered the car and began talking with his grandson through an open window. Appellant suggested that the bomb be detonated at that instant in order to kill both Michaels. Anthony Leisure convinced appellant otherwise.
The van followed as the elder Michaels drove away from the church. Anthony tried to detonate the bomb several times without success; the radio controlled detonating device refused to work. For a moment, the murderers lost Michaels but saw his car on I-55. Giving chase, they caught their victim. Anthony again threw the *781 switch on the detonating device: the bomb did not go off. Frustrated, Anthony threw the switch again and again until finally the bomb exploded. The victim's upper torso was ripped from the rest of his body and thrown from the car. It struck the windshield of the vehicle following.
The van immediately left the highway and headed toward Illinois. Breaking up the remote control detonating devices, the murderers threw pieces out as the van sped along. In Illinois, they washed the van several times. Returning to Missouri, they stopped at an automobile supply store where appellant bought new windshield wiper blades in an attempt to remove all traces of the explosion from the van. A stop at a drug store brought rubbing alcohol and shaving lotions, which were used to remove the odor of explosives from the hands of the killers.
Approximately a week after the murder, Paul Leisure met with John Vitale, the new leader of the Italians. (Anthony Giordano had died.) Leisure and Vitale agreed that the Syrians would control the Local 110. Two relatives of Michaels lost their union jobs immediately after the murder.
State v. Leisure, 749 S.W.2d at 369-70. Both Ronald Broderick and John Ramo testified at petitioner's trial regarding the above events.
To fully analyze petitioner's claims, an understanding of the history of this case and several related criminal proceedings is also necessary. The following is an overview of some of the relevant events relating to the deadly crime war which began sometime in late 1979 in the St. Louis, Missouri area involving the control of union locals.
As stated above, on September 17, 1980, James A. Michaels, Sr., ("Jimmy Michaels") was killed when a bomb exploded in his car while he was driving on Interstate 55 in St. Louis. On August 11, 1981, petitioner's older cousin, Paul Leisure, was seriously maimed, losing both legs and suffering hand, facial and other injuries when a bomb exploded in his automobile parked in front of his home in St. Louis. On September 11, 1981, Charles John Michaels, the grandson of Jimmy Michaels, and Dennis Day were injured in a shooting at The Edge restaurant in St. Louis. On October 16, 1981, George "Sonny" Faheen was killed when a bomb exploded in his car parked in the Mansion House garage in St. Louis. On October 17, 1981, Michael Kornhardt was arrested on state capital murder charges in connection with Faheen's death and subsequently released on bond. On July 31, 1982, Kornhardt's body was found in St. Charles County, Missouri. Kornhardt died from a gunshot wound.
On August 4, 1982, petitioner was arrested on state capital murder charges in connection with Faheen's death and, subsequently, released on bond. In exchange for immunity, on August 6, 1982, Fred Prater testified before a federal grand jury in the United States District Court for the Eastern District of Missouri regarding the murder of Michael Kornhardt, the shooting at The Edge restaurant and the car bombing of Paul Leisure. On September 16, 1982, petitioner was arrested on state assault charges arising out of the shooting at The Edge restaurant. Subsequently, petitioner was again released on bond.
On April 13, 1983, a six-count federal indictment was filed charging Paul Leisure, Anthony Leisure, John Ramo, Joe Broderick, Charles Loewe, Robert Carbaugh, Steven Wougamon and petitioner with violations of the Racketeering Influenced and Corrupt Organizations laws, 18 U.S.C. § 1961, et seq., ("RICO"), obstruction of justice and firearms (explosive device) violations.[2] At about the same time, state indictments were filed in the Circuit Court of the City of St. Louis against all except Carbaugh, charging capital murders and assaults, including a charge of capital murder against petitioner for the death of Jimmy Michaels.
On April 2, 1985, a federal jury returned its verdicts on the federal indictment, finding petitioner guilty of all charges. Petitioner was sentencing to a total of 55 years. Subsequently, petitioner was transferred from federal custody to state custody.
*782 On March 30, 1987, the trial for the murder of Jimmy Michaels (the underlying trial herein) commenced in the Circuit Court for the City of St. Louis, the Honorable Jack Koehr presiding. The jury returned a verdict finding petitioner guilty of capital murder. On April 9, 1987, following a one-half day penalty phase hearing, petitioner was sentenced to death. Petitioner's codefendants in the capital murder charge stemming from the Michaels' car bombing, Anthony Leisure and Paul Leisure, were convicted of capital murder in separate trials and were sentenced to life imprisonment without possibility of parole for fifty years. State v. Anthony Leisure, 810 S.W.2d 560 (Mo.App. 1991); State v. Leisure, 772 S.W.2d 674 (Mo. App.1989).
Subsequently, on May 15, 1989, petitioner was found guilty of the capital murder of George "Sonny" Faheen and sentenced to life imprisonment by the state court because the jury was unable to agree on punishment. State v. Leisure, 838 S.W.2d 49 (Mo.App. 1992).

III. PETITIONER'S DIRECT APPEAL AND POSTCONVICTION PROCEEDINGS
On May 4, 1987, petitioner moved for a judgment of acquittal notwithstanding the verdict or, in the alternative, a new trial. The trial court denied the motion. Petitioner filed his direct appeal and, in a split decision,[3] the Missouri Supreme Court affirmed the conviction and sentence. State v. Leisure, 749 S.W.2d 366 (Mo.1988). All three of petitioner's motions to recall the mandate were denied. Resp. Exhs. F and G.
On May 18, 1988, pursuant to Missouri Rule 29.15, petitioner filed a pro se postconviction motion to vacate his conviction and sentence. On July 18, 1988, petitioner's appointed counsel filed an amended Rule 29.15 motion. On August 11, 1988, the circuit court dismissed both the pro se and amended motions without an evidentiary hearing. On May 16, 1989, the Missouri Supreme Court vacated the circuit court's judgment of dismissal and remanded with directions to hold an evidentiary hearing.
On remand, petitioner filed his second amended Rule 29.15 motion, which was dismissed on March 2, 1990 as untimely. Subsequently, the circuit court sustained the State's motion to dismiss/disallow any further amended motions, thereby denying any requests for time to file any further pleadings or adduce evidence on issues not contained in the pro se or first amended Rule 29.15 motions. An evidentiary hearing was held over several days. The testimony and evidence were limited to matters raised in the original pro se Rule 29.15 motion and the first amended Rule 29.15 motion. Pursuant to Rule 29.15(h), the circuit court received petitioner's testimony by deposition.
The circuit court again denied the pro se and amended Rule 29.15 motions. The Missouri Supreme Court affirmed the denial, including the circuit court's denial of petitioner's request to file a second amended 29.15 motion. Leisure v. State, 828 S.W.2d 872 (Mo. banc 1992). The United States Supreme Court denied petitioner's petition for a writ of certiorari. Leisure v. Missouri, 506 U.S. 923, 113 S.Ct. 343, 121 L.Ed.2d 259 (1992).

IV. PROCEDURAL BAR ANALYSIS
A federal court reviewing a state conviction in a 28 U.S.C. § 2254 proceeding may consider only those claims which the petitioner has presented to the state court in accordance with state procedural rules. Gilmore v. Armontrout, 861 F.2d 1061, 1065 (8th Cir.1988). This requirement implicates both the question of whether petitioner has exhausted all remedies available in the state courts (the exhaustion requirement), and whether he has preserved his claims for federal habeas corpus review by complying with state procedural rules governing their presentation (the procedural default inquiry). Id. The question of whether a claim is procedurally barred is distinct from the inquiry concerning whether a claim has been exhausted. *783 Satter v. Leapley, 977 F.2d 1259, 1261 (8th Cir.1992). A federal court may entertain a claim which has been procedurally defaulted in the state courts if petitioner can show cause to excuse his state court default as well as resulting prejudice from the default, or if petitioner can show that a fundamental miscarriage of justice would result from the Court's failure to entertain the claim. Wainwright v. Sykes, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); Coleman v. Thompson, 501 U.S. 722, 750-52, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); Sawyer v. Whitley, 505 U.S. 333, 339-41, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). Failure to satisfy the procedural default analysis mandates rejection of that particular ground.

V. ANALYSIS

A. Ground I: The Death Sentence Imposed Upon Petitioner Violated his Rights Under the Fifth, Eighth and Fourteenth Amendments Because of the Disporportionality of His Death Sentence When Compared to the Life Sentences Imposed Upon the Petitioner's Accomplices Who Had Greater Culpability for the Murder For Which They Were All Convicted.
In his first ground for relief, petitioner claims that he has been deprived of his constitutional rights under the Fifth[4], Eighth[5] and Fourteenth[6] Amendments because the death sentence imposed upon him is excessive in light of the life sentences imposed upon his cousins, Paul Leisure and Anthony Leisure, for the same crime and the dismissal of charges against Charles Loewe, another alleged co-conspirator. Petitioner argues that of all the convictions in the related state murder trials, only petitioner has been sentenced to death, even though the evidence demonstrated that petitioner was the least culpable of the group, was mildly mentally retarded, ill-educated and a substance abuser.
"The Eighth Amendment does not require that courts compare the sentences imposed in similar cases." Foster v. Delo, 39 F.3d 873, 882 (8th Cir.1994) (citing Pulley v. Harris, 465 U.S. 37, 48-51, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984)) (there is no constitutional requirement for states to establish a form of proportionality review). Nonetheless, the Missouri legislature has mandated a proportionality review of all cases where the death sentence is imposed in Missouri courts. R.S.Mo. § 565.035.[7] Although the Constitution does not mandate proportionality review, once in place, it must be conducted consistently with the Due Process Clause. Kilgore v. Bowersox, 124 F.3d 985, 996 (8th Cir.1997); Foster v. Delo, 39 F.3d at 882 ("Where a state creates a right, such as a defendant's right to review of his sentence, the Fourteenth Amendment of course entitles him to procedures to ensure that the right is not arbitrarily denied.") Where the Missouri Supreme Court conducts the relevant review and concludes that the punishment is not disproportional to that imposed for similar crimes in similar cases, a habeas claim presents no basis for relief. Foster v. Delo, 39 F.3d at 882; Murray v. Delo, 34 F.3d 1367, 1376-77 (8th Cir.1994); LaRette v. Delo, 44 F.3d 681, 688 (8th Cir.1995).
Pursuant to R.S.Mo. § 565.035, the Missouri Supreme Court conducted a thorough proportionality review of petitioner's sentence and stated:

*784 The jury found that this murder involved "torture or depravity of mind" and that the murder was "outrageously or wantonly vile, horrible or inhuman." Section 565.032.2(7). Murders involving similar levels of depravity have consistently resulted in the death penalty. [case citations omitted]
Here, appellant and others coolly and deliberately discussed potential victims, how the death of each would enhance the Leisure family influence, and calmly voted which to kill. The murder was carefully planned, prepared, the victim stalked, and the plan implemented with neither remorse nor regret. Appellant was an integral part of the entire sordid episode, personally surveilling the victim and planting the bomb. Contrary to appellant's suggestion and only because cooler heads prevailed, was the bomb not exploded in the church parking lot, claiming another victim.
The victim's body was blasted apart. Pieces of his flesh were scattered all over an interstate highway. Pieces of his body rained down on other motorists. A careful attempt to hide and destroy evidence followed.
Appellant's actions were conscienceless and pitiless; they were the product of a depraved mind, a mind which knew right from wrong but which chose to kill to further the economic ends of his family. The death penalty was neither disproportionate nor excessive.
Appellant knowingly created a risk of death to more than one person by means of a device which would normally be hazardous to the lives of more than one person. Section 565.032.2(3). The detonation of an explosive device, designed and placed to kill a driver, on an interstate highway is unquestionably hazardous to the lives of more than one person and displays a complete indifference to the lives of others. This Court upheld the death penalty in State v. Griffin, 662 S.W.2d 854 (Mo. banc 1983), cert. denied, 469 U.S. 873, 105 S.Ct. 224, 83 L.Ed.2d 153 (1984), in which the defendant sprayed bullets from a semiautomatic weapon at his victim in the presence of bystanders. This case is similar to Griffin. Appellant willingly placed innocent persons at risk. He carried out his murderous plot with a single-minded purpose, which saw only, and cared only, for the death of his intended victim, without regard for others who, too, faced peril from his plan.
State v. Leisure, 749 S.W.2d at 382.
Citing relevant Missouri cases and the psychological testimony from trial that petitioner understood the difference between right and wrong, the court rejected petitioner's claim that his lack of education and generally low intelligence rendered the death penalty disproportionate and excessive. Id. Citing the fact that petitioner participated in the selection of the victim and helped form and refine the plan for the murder, the court also rejected petitioner's claim that his sentence was disproportionate because he was simply a follower under the influence of others. Id. at 383. Noting that the life sentences received by petitioner's cousins were not determinative of the proportionality issue, the court stated that "after a review of other cases, the defendant and the facts of this case, we hold that the death penalty was proper and ... neither disproportionate nor excessive." Id.
The Missouri Supreme Court exercised its discretion and judgment in conducting a proportionality review against a backdrop of other Missouri cases. The Court conducted a comparison of petitioner's case with similar cases and concluded that the death penalty was not disproportionate to the crime of which petitioner was convicted. There is no basis for petitioner's claim that the Missouri Supreme Court's procedure and findings deprived petitioner of his due process rights or his rights under the Eighth Amendment. See Kilgore v. Bowersox, 124 F.3d at 996; LaRette v. Delo, 44 F.3d at 688; Six v. Delo, 94 F.3d 469, 478 (8th Cir.1996).
In spite of well-settled authority that petitioner fails to state a claim for habeas relief on grounds of lack of proportionality, petitioner relies upon Pilchak v. Camper, 935 F.2d 145, 148 (8th Cir.1991), and claims that his sentence is unconstitutionally disproportionate, arbitrary, irrational and fundamentally *785 unjust. Trav. pp. 8-11. In Pilchak, the Eighth Circuit affirmed the district court's grant of a new trial to a petitioner who was serving a life sentence after being convicted of a drug crime. In Pilchak, the petitioner had been represented at trial by an attorney suffering from Alzheimer's disease and was found guilty by a jury that was unconstitutionally selected. In affirming the district court's granting of the writ, the Eighth Circuit stated that the petitioner "was not the proper subject for a sentence of a lifetime of incarceration. ... In this regard, we again point out that the principal conspirator ... was sentenced to a term of years, which sentence has resulted in his already having gained his freedom." Id. at 148.
The Eighth Circuit did not hold in Pilchak, as petitioner suggests, that the petitioner's sentence was unconstitutionally disproportionate to the lesser sentence imposed upon the more culpable accomplice. Rather, the Eighth Circuit stated that "we have chosen not to discuss in detail the basis for our believing that the sentence was improper. We think that there are elements of equal protection, substantive due process, and unusual punishment involved in the lifetime sentence, any one of which may be sufficient under the facts of this action to support our position." Id. at 148 n. 5. The Eighth Circuit's findings and holding in Pilchak do not support petitioner's argument that his proportionality claim is the proper subject of habeas review.
Even if this Court were to reevaluate the Missouri Supreme Court's proportionality review, ample authority supports upholding petitioner's death sentence. This Court would concur with the Missouri Supreme Court that the death sentence was neither disproportionate nor excessive. For all of these reasons, the Court will deny all relief requested in Ground I of the amended petition.

B. Ground II: The Death Sentence Imposed Upon Petitioner Violated His Rights Under the Fifth, Eighth and Fourteenth Amendments Because the Jury was Presented with Irrelevant Gruesome Photographs Solely to Inflame Them.
In his second ground for relief, petitioner alleges that at the penalty phase, the trial court erroneously admitted into evidence state's Exhibit 52, a photograph of George "Sonny" Faheen's charred remains ("Faheen photograph"). The Faheen photograph depicts the aftermath of the Faheen car bombing and shows Faheen's burnt corpse fused to the seat of his automobile. Pet.Exh. 3. Petitioner asserts that the Faheen photograph had no probative value and was offered solely for its prejudicial and inflammatory impact. Petitioner alleges that the admission of the Faheen photograph is an independent violation of his Eighth Amendment right to be free from cruel and unusual punishment by arbitrary sentencing and that the admission so fatally infected the trial that it denied him of his due process right to fundamental fairness.
During the penalty phase of the trial, petitioner stipulated to his federal RICO conviction. The jury received a certified copy of the judgment and commitment report of the RICO conviction and the indictment upon which the conviction was based. Tr. Tran. Vol. X, pp. 2-3. Count I of the federal indictment charged petitioner with committing six criminal acts including: (1) the murder of James Michaels, Sr.; (2) the conspiracy to murder James Anthony Michaels, III, Milton Schep, and others; (3) the attempted murder of John Charles Michaels; (4) the murder of George Faheen; (5) the murder of Michael Kornhardt; and (6) the intimidation of Steve Wougamon with the intent to obstruct justice. The trial judge informed the jury that the federal jury needed only to have found petitioner guilty of two of the six acts alleged in the RICO indictment to convict and that the federal jury did not specify the two acts on which it based its guilty verdict. Tr. Tran. Vol X, p. 3.
During the penalty phase, the state called as a witness Stephen Sorocko, the bomb and arson technician from the St. Louis Metropolitan Police Department who had observed the aftermath of the Faheen car bombing. The trial court overruled repeated objections by petitioner's trial attorney to the state's introduction of the Faheen photograph. Tr. Tran. Vol. IX, pp. 4-9 and Vol. X, pp. 6-9. *786 Sorocko testified about the Faheen car bombing and the Faheen photograph was admitted into evidence. On cross-examination, Sorocko testified that petitioner had not yet been found guilty of Faheen's murder. Tr. Trans., Vol. X., pp. 10-11.
In determining that the admission of the Faheen photographs[8] was not erroneous, the Missouri Supreme Court stated:
After the publication of the RICO information to the jury, the court admitted photographs of the body of George Faheen, who had been killed in a car bombing. The court admonished the jury that appellant had not been convicted of these murders; on cross-examination, the state's police witness testified that appellant had not had "a chance to prove his innocence for the murder of George Faheen."
***
[T]he trial court has broad discretion in ruling evidence [sic] offered during the penalty stage of a capital case. While we agree the subject photographs are gruesome, the fact remains they were relative to circumstances surrounding the death of George Faheen and connected and tied to one of the six criminal acts charged in the federal indictment. The trial judge specifically pointed out to the jury that the defendant had not been convicted of the various other murders alleged in that indictment. Under the graphic and gruesome evidence received during the guilt phase of the trial, we find no error which calls for reversing the penalty assessed by the jury.
State v. Leisure, 749 S.W.2d at 378-79. Moreover, the Court stated:
Even if we assume error for the sake of argument, that error is not prejudicial. The jury listed the RICO conviction as a nonstatutory aggravating circumstance. It also found three statutory aggravating circumstances, any of which was alone sufficient to justify the death penalty. [case citations omitted]
The facts before the jury were clear and essentially uncontroverted. Appellant participated in the selection of the victim as a target for murder. He stole a car identical to the victim's to enable him to plant the bomb quickly. He stalked the victim to learn of his habitual movements. He attached the bomb to the victim's car. He participated in efforts to remove evidence of the crime from the van. The murder was the product of appellant's desire to achieve economic benefit from the victim's death. The murder itself was horrible and vile.
From these uncontroverted facts, including photographs of the carnage on I-55, the jury sentenced appellant to die. Given the grisly evidence already before the jury, the challenged photographs were simply cumulative of the photographs of the victim's body in this case. We find no prejudice. The point is denied.
Id. at 379.
In reviewing a federal habeas petition, this Court does not determine whether evidence is inadmissible as a matter of state law after the highest state court has determined that the evidence is admissible. Sweet v. Delo, 125 F.3d 1144, 1154 (8th Cir.1997) (citing Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)). Because the Missouri Supreme Court has determined that the admission of the Faheen photograph into evidence was proper, the Court's review of petitioner's claim of evidentiary error is limited to whether the admission of the photograph "infringed upon a specific federal constitutional right" or was "so grossly or conspicuously prejudicial that it fatally infected the trial and denied petitioner fundamental fairness." Ford v. Armontrout, 916 F.2d 457, 460 (8th Cir.1990) (citing Wood v. Lockhart, 809 F.2d 457, 459-60 (8th Cir.1987)). To meet this standard, petitioner "must show a reasonable probability that the error affected the trial's outcome." Troupe v. Groose, 72 F.3d 75, 76 (8th Cir.1995).
To support his argument, petitioner has provided the Court with an affidavit from *787 juror Donna Denando listing "several facts that were significant to [her] in reaching [her] recommendation of a death sentence." Amended Pet., Exh. 4, ¶ 2. Testimony regarding the deliberative process, the motives of individual jurors and their conduct during deliberations is inadmissible. See Fed. R.Evid. 606(b);[9]Bannister v. Armontrout, 4 F.3d 1434, 1444 n. 15 (8th Cir.1993); see also Silagy v. Peters, 905 F.2d 986, 1008-09 (7th Cir.1990); Bibbins v. Dalsheim, 21 F.3d 13, 16-17 (2d Cir.1994). After careful review of Ms. Denando's affidavit, the Court concludes that the affidavit fits within the prohibition of Fed.R.Evid. 606(b). Petitioner cannot rely on juror Denando's statements in this habeas proceeding to impeach the jury's sentencing determination. Thus the Court will not consider the affidavit.
Upon review of the Faheen photograph and the entire trial transcript, the Court concludes that the introduction of the Faheen photograph did not so affect the fundamental fairness of the sentencing proceeding as to violate petitioner's Eighth Amendment rights. The photograph did not create a constitutionally unacceptable risk that the jury would impose the death penalty in an arbitrary or capricious manner. Moreover, the introduction of the photograph did not deny petitioner his right to due process. Romano v. Oklahoma, 512 U.S. 1, 12-13, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1994) (in determining whether the introduction of certain evidence at the sentencing phase of a capital trial violates the Due Process Clause of the Fourteenth Amendment, the Court must determine, after an "examination of the entire proceedings" whether the evidence "so infected the trial with unfairness as to make the resulting conviction a denial of due process") (citing Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)).
Petitioner was convicted of participating in a scheme to plant a car bomb which would kill. The victim's body was scattered over an interstate highway and rained down on other motorists. At the guilty phase of the trial, the jury saw photographs of what remained of the victim's dismembered body. Tr. Tran. Vol. IV, pp. 66-67 and state's Exhs. 13, 14 & 15.[10] When objecting to the introduction of these three photographs, petitioner's attorney stated, outside the presence of the jury, that the photographs were the "most gruesome photographs [he'd] ever seen in [his] entire life." Tr. Tran. Vol. IV, p. 60. An eyewitness, Ms. Margaret Folkerts, testified regarding what she saw of the victim's remains: "[T]he head was not really recognizable as a head. ... It was rather mangled. The torso from the neck to approximately the knees was intact and the rest of it was sort of strewn all over the highway." Tr. Tran. Vol. IV, p. 42. The forensic pathologist also identified state's exhibit 14 and testified as follows:
The injuries were severe and explosive in nature. His right side of his body was blown off from the fourth vertebra down to his pelvis. This was all knocked off. The left side of his body was blown off. His spinal column in the central portion here, that's in the abdominal portion, was all blown apart. His left leg was blown apart, and by left leg, I mean mean [sic] everything from his knee down was knocked off, *788 and it was presented to me in a separate plastic bag, and he had fractures of his right femur, that's the right leg bone, and a fracture here. He had a fracture of his left humerus. So, for practical purposes, all organs from this level down, the fourth, that's approximately at the clavicles, were blown apart, and everything was held together by strings of tissue, and he bled to death.
Tr. Tran. Vol. V, pp. 57-58.
The foregoing evidence, presented during the guilt phase of petitioner's trial, was an accurate presentation of some details of the crime. In light of the graphic nature of the foregoing testimony and introduction into evidence of the photographs of the victim's remains, the Court concludes that the introduction of the Faheen photograph was not so "conspicuously prejudicial that it fatally infected the [penalty phase] and denied petitioner fundamental fairness." Ford v. Armontrout, 916 F.2d at 460. Although the issue of whether the Faheen photograph was properly admitted may have presented a close question under Missouri law, the admission of the evidence did not violate petitioner's constitutional rights.
Alternatively, even if petitioner has alleged error of a constitutional magnitude, the error is only ground for relief in a habeas proceeding if the error "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 638, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (citing Kotteakos v. United States, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).[11] The Court has considered the effect the introduction of the Faheen photograph had in the context of other evidence presented. The Court has reviewed the strength of each of the four aggravating circumstances the jury found, any of which was alone sufficient to justify the death penalty.[12] The Court concludes that the admission of the Faheen photograph, even if erroneous, did not have a "substantial and injurious effect or influence" in determining the jury's sentence. Id. For all of these reasons, the Court will deny all relief requested in Ground II.

C. Ground III: The Conviction and Death Sentence Imposed Upon Petitioner Violated his Rights Under the Fifth, Sixth, Eighth and Fourteenth Amendments to The Constitution Because, Without Petitioner's Knowledge or Consent, Trial Counsel Decided at the Last Moment to Use Diminished Capacity Defense.
In his third ground for relief, petitioner asserts that he and his trial counsel, Alan Zvibleman, had planned to present an alibi defense at trial and that petitioner had discussed this defense on several occasions with Zvibleman's then law-student assistant, Gerald Bassett. Approximately two weeks before trial, petitioner was examined by a psychologist, Dr. Daniel J. Cuneo, so that the psychologist would be ready, if needed, to testify at the penalty phase of the trial. Dr. Cuneo concluded that petitioner was borderline mentally retarded. Thus, petitioner alleges that without his consent, Zvibleman decided to rely upon a diminished capacity defense.
At the hearing in state court on petitioner's Rule 29.15 motion, Zvibleman testified that after some discussion, petitioner agreed to proceed with a diminished capacity defense. Resp.Exh. J, Vol. I, pp. 297-98. Also at the motion hearing, petitioner testified via deposition that he never told Zvibleman that he wished to proceed with a diminished capacity *789 defense at the guilt phase of the trial. Resp.Exh. K(2), pp. 79-80. Based upon the foregoing, petitioner now asserts that he did not knowingly, intelligently and voluntarily waive his right to testify in his own behalf and that he was deprived effective assistance of counsel in violation of the Fifth, Sixth and Fourteenth Amendments. Petitioner has divided this claim into several subclaims.

Ground III.A.: Petitioner Did Not Knowingly, Intelligently and Voluntarily Waive His Right to Testify in His own Behalf in Violation of the Fifth, Sixth[13] and Fourteenth Amendments.
Petitioner had a constitutional right to testify in his own behalf at trial. Rock v. Arkansas, 483 U.S. 44, 49, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987); U.S. v. Bernloehr, 833 F.2d 749, 751 (8th Cir.1987). Petitioner alleges that his right to testify was violated because he did not knowingly, intelligently and voluntarily waive this right. Petitioner alleges that in spite of his repeated assertions to counsel that he wished to testify, his attorney made the decision that he would not. Petitioner further asserts that the Fourteenth Amendment requires the trial court to make an independent inquiry into whether petitioner had voluntarily relinquished his right to testify and that the trial court made no such inquiry.
Petitioner first attempted to raise the present claim in state court in a second amended Rule 29.15 motion which the state court denied leave to file as untimely. Resp. Exh. K(1), p. 120 (Proffered Second Amended Motion at ¶ 22). In his appeal from the ultimate denial of his Rule 29.15 motion, petitioner did not raise the present claim, but did allege that the state court erred in denying him leave to file a second amended Rule 29.15 motion. In affirming the denial the state court's decision denying petitioner leave to file his second amended Rule 29.15 motion, the Missouri Supreme Court stated:
Rule 29.15 does not operate as an unconstitutional suspension of the writ of habeas corpus. White v. State, 779 S.W.2d 571, 572-573 (Mo. banc 1989). Rule 29.15(f) provides for opportunity to amend a pro se motion within 30 days after counsel is appointed, or the entry of appearance of nonappointed counsel. The rule allows for the court to extend the time for filing one additional 30-day period. The law is clear that the time limitations of Rule 29.15 are valid and mandatory. Day v. State, 770 S.W.2d 692, 695 (Mo. banc 1989), cert. denied, 493 U.S. 866, 110 S.Ct. 186, 107 L.Ed.2d 141 (1989). Leisure filed both a pro se motion and an amended motion. He availed himself of all remedies available under Rule 29.15. The motion judge did not err in denying Leisure's motion for leave to file a second amended motion.
Leisure v. State, 828 S.W.2d 872 at 878-79.
Federal habeas review is barred when a state court has not decided a federal claim on the merits because the petitioner violated a state procedural law. The state judgment rests on independent and adequate state procedural grounds. Wainwright v. Sykes, 433 U.S. 72, 81-82, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); Harris v. Reed, 489 U.S. 255, 261-63, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). Petitioner argues that the present claim is not procedurally defaulted because, in substance, this claim was fairly presented to the state court. Petitioner's pro se and amended Rule 29.15 motion contain petitioner's allegation of ineffective assistance of counsel based upon Zvibleman's failure to call any alibi witnesses. Resp.Exh. K(1), pp. 190-91, 212. Petitioner argues that because "his testimony at trial was an integral and planned part of the alibi defense" there is an "arguable factual commonality" between the failure to present the alibi defense and his present claim of the lack of a knowing and intelligent waiver of his right to testify. Trav. p. 16.
"In order for a claim to have been adequately presented to a state court for procedural purposes in a habeas proceeding, the same facts and legal theories in support of the claim must be advanced in both state and federal court." Ford v. Armontrout, 916 *790 F.2d at 460. Upon review of both the pro se pleadings and the amended pleadings presented to the state court, the Court concludes that the substance of petitioner's present claim was not presented to the state court. Resp.Exh. K(1), pp. 189-201, 203-213. In state court, petitioner alleged that his attorney proceeded on an untenable defense theory of diminished capacity contrary to movant's wishes to proceed on an alibi theory and, that in doing so, his counsel was ineffective. Id. at 190, 212-213. Petitioner also relies upon portions of the transcript of the evidentiary hearing on his Rule 29.15 motion. The evidence presented pertained to petitioner's claim of ineffective assistance of counsel regarding the change in strategy from the alibi defense to a diminished capacity defense. The claim herein presents additional facts regarding the alleged denial of petitioner's right to testify in his own behalf.
The claims presented to the state court are not the "substantial equivalent" of the present federal claim that petitioner did not knowingly and voluntarily waive his right to testify in his own behalf. Frey v. Schuetzle, 78 F.3d 359, 361 (8th Cir.1996) (citing ElTabech v. Hopkins, 997 F.2d 386, 389 (8th Cir.1993) (in a procedural default context, a claim charging the denial of the constitutional right to testify on one's own behalf "is wholly unrelated to the elements of an ineffective assistance of counsel claim")). If petitioner wished to proceed on his claim that he did not knowingly and voluntarily waive his right to testify, he should have raised such a claim in state court.
Petitioner also argues that this claim is not procedurally defaulted because the state court's refusal to allow the second amended 29.15 motion was based on an ambiguous rule, thus, there was not an "adequate and independent" state procedural bar. Petitioner cites no authority for his proposition that the Missouri procedural rule governing the filing of 29.15 motions was ambiguous. Missouri courts have consistently held that the time limitations of Rule 29.15 are valid and mandatory. Day v. State, 770 S.W.2d 692, 695 (Mo. banc 1989); see also Oxford v. Delo, 59 F.3d 741, 747 (8th Cir. 1995) (noting that although Rule 29.15 did not have a lengthy history at the time the petitioner filed his amended motion, certain procedural requirements were plainly stated in the rule). Because the state procedural rule was both firmly established and regularly followed, see Ford v. Georgia, 498 U.S. 411, 423-24, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991), the procedural bar was adequate and independent.
Because the present claim was not presented to the state court, the claim is barred unless petitioner can both show cause and prejudice for his procedural default, or a resulting miscarriage of justice. Petitioner alleges that his cause was ineffective assistance of post-conviction counsel because counsel failed to raise this point in his first amended Rule 29.15 motion. Petitioner further alleges that prejudice is presumed from the denial of his right to testify.
A defendant has no constitutional right to effective assistance of post-conviction counsel. Coleman v. Thompson, 501 U.S. at 752. "Absent a constitutional right, [petitioner] cannot claim ineffective assistance of post-conviction counsel as cause for his procedural defaults." Sweet v. Delo, 125 F.3d at 1151. The Eighth Circuit has "recognized that this principle applies to claims of ineffective assistance of Rule 29.15 counsel in Missouri." Id. Thus, petitioner's effort to show cause fails. Moreover, no Eighth Circuit authority supports petitioner's contention that prejudice is presumed when a petitioner alleges that he did not voluntarily and knowingly waive his right to testify. Petitioner has failed to show what his testimony would have been and how he was prejudiced by the absence of such testimony. Finally, petitioner makes no showing of a fundamental miscarriage of justice. For all the foregoing reasons, the Court will deny all relief requested in Ground III.A on the basis of procedural default.

Ground III.B.: Trial Counsel Did not Provide Effective Assistance to Petitioner When He Switched Defenses on the Eve of Trial.
Petitioner asserts four distinct claims of ineffective assistance of counsel arising out of what he alleges was his counsel's independent *791 decision to present an ill-prepared diminished capacity defense instead of the planned alibi defense.

Ground III.B.1.: Failure to Fulfill Duty to Advise.
Petitioner alleges that "[i]ntricately tied to Petitioner's lack of a knowing, intelligent and voluntary waiver of the right to testify, is trial counsel's ineffective representation based upon his unreasonable failure to advise Petitioner that he would not testify." Amended Pet., p. 33. Petitioner further alleges that trial counsel's failure to inform petitioner of the decision not to present an alibi defense violated Rule 1.4(b) of the Rules of Professional Responsibility.
Petitioner again refers to the affidavit of juror Denando in support of his claim that the outcome of his sentencing would have been different if he had been allowed to testify in his own behalf. Pet.Exh. 4. For the reasons previously stated and pursuant to Fed.R.Evid. 606(b), see supra discussion of Ground II, the Court will not consider Ms. Denando's affidavit.
Although petitioner alleges that this claim of "failure to fulfill the duty to advise" was exhausted in substance in state court, a review of the state court record reveals that this claim was not raised in state court and as such, is procedurally barred. Petitioner's argument that ineffective assistance of post-conviction counsel constitutes cause for failure to raise this claim is without merit. Sweet v. Delo, 125 F.3d at 1151; Coleman v. Thompson, 501 U.S. at 752. Moreover, petitioner has failed to show any resulting prejudice or the applicability of the miscarriage of justice exception.
Alternatively, if the Court were to reach the merits, petitioner fails to state a claim for habeas relief. A violation of the Rules of Professional Responsibility provides no independent basis upon which to grant federal habeas relief; habeas relief is available only when based upon a violation of the Constitution or federal law. Petitioner has not demonstrated that his counsel's alleged failure to fulfill the "duty to advise" rose to the level of constitutionally ineffective assistance of counsel. For all the foregoing reasons, Ground III.B.1 does not merit habeas corpus relief.

Ground III.B.2.: Failure to Abide By Decision of Client.
Petitioner alleges that his trial attorney did not provide him with effective assistance when (1) he failed to abide by petitioner's decision to testify during the guilt phase of the trial and (2) failed to abide by petitioner's decision to present an alibi defense. Although petitioner asserts that respondents have failed to address this claim, respondents addressed this claim in their original response to the Court's order to Show Cause. Resp., pp. 78-82. The Court will separately analyze these two subclaims.
First, petitioner alleges that his counsel was ineffective in that he failed to abide by petitioner's decision to testify in his own behalf. Petitioner's claim of ineffective assistance of trial counsel is procedurally defaulted because petitioner failed to raise this distinct claim of ineffective assistance of counsel in state court. Resp.Exh. K(1), pp. 189-201, 203-13; Oxford v. Delo, 59 F.3d at 747 ("performance of trial counsel is irrelevant to the cause inquiry where petitioner fails to raise the ineffective assistance of trial counsel claim in state court proceedings"). Because petitioner has failed to show cause and prejudice resulting from any procedural bar, or that the Court's failure to consider the claim would result in a miscarriage of justice, the claim is procedurally barred.
Next, petitioner alleges that his trial counsel was ineffective in that he failed to abide by petitioner's decision to present an alibi defense, but instead proceeded with a diminished capacity defense. To prevail on this claim of ineffective assistance of counsel, petitioner must show "(1) that his counsel's assistance fell below an objectively reasonable standard and (2) that he was prejudiced by his counsel's ineffective assistance." McDonald v. Bowersox, 101 F.3d 588, 594 (8th Cir.1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).
The Missouri Supreme Court addressed, as a single claim, petitioner's allegation of *792 "ineffective assistance of counsel for refusal to present alibi witnesses and for proceeding with a diminished capacity defense contrary to Leisure's wishes and instructions." Leisure v. State, 828 S.W.2d at 874. In the present petition, petitioner separately asserts his claim of "failure to abide" from his claim of "failure to present alibi defense." See infra Ground III.B.4. For the reasons discussed below, see infra Ground III.B.4., the Court concurs with the findings of the state courts that petitioner's trial counsel was not ineffective in his choice of trial strategy. Thus, even if trial counsel did not "abide" by a decision of petitioner, petitioner has failed to show any resulting prejudice and, thus, has failed to show that his counsel was ineffective. For all of these reasons, Ground III.B.2 is rejected.

Ground III.B.3.: Failure to Prepare Diminished Capacity Defense.
Petitioner alleges that his trial counsel failed in his duty to present a proper defense when counsel decided on the eve of trial to proceed with a "hastily devised defense of diminished capacity." Amended Pet., p. 35. In support of his claim, petitioner attaches an affidavit from Daniel J. Cuneo, one of the two clinical psychologists who testified at trial on petitioner's behalf. Tr.Tran. Vol. VII, pp. 92-249 and Vol. VIII, pp. 1-116. In his affidavit, Dr. Cuneo concludes that petitioner's trial attorney failed to represent petitioner in a reasonably competent manner because counsel was not prepared to present a diminished capacity defense (i.e. counsel did not contact Dr. Cuneo until approximately two weeks before trial and then did not seek additional time to prepare a diminished capacity defense even after Dr. Cuneo advised counsel of his conclusions following petitioner's evaluation). Pet.Exh. 5, ¶ 4. Petitioner also attaches an affidavit of Gerald Bassett, Zvibleman's then law student assistant, in which Bassett attests that he did not properly investigate and develop the diminished capacity defense presented at trial. Pet.Exh. 7.
Respondents correctly assert that petitioner is procedurally barred from relying upon the affidavits of Bassett and Dr. Cuneo. Petitioner relies upon Bolder v. Armontrout, 921 F.2d 1359, 1364 n. 9, and argues that there is at least an "arguable factual commonality" between Dr. Cuneos' affidavit and the evidence presented at the hearing on petitioner's Rule 29.15 motion. Petitioner's reliance on Bolder v. Armontrout is misplaced. A federal court's consideration of factual matters in support of an allegation presented in a federal habeas petition which were not also presented to the state court is subject to the standard cause and prejudice analysis of procedurally defaulted claims. Byrd v. Armontrout, 880 F.2d 1, 7 (8th Cir. 1989); Keeney v. Tamayo-Reyes, 504 U.S. 1, 8-9, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992). Petitioner failed to develop the factual predicate of his current claim of ineffective assistance of counsel in state court. Petitioner received an evidentiary hearing in state court and the state court considered numerous claims of ineffective assistance of counsel. Bassett testified at the hearing. Petitioner has failed to allege any cause that prevented him from adequately developing the facts regarding this claim of ineffective assistance of counsel during his state court post-conviction hearing. See McDonald v. Bowersox, 101 F.3d at 592-93; Miller v. Lockhart, 65 F.3d 676, 679 (8th Cir.1995); Bowman v. Gammon, 85 F.3d 1339, 1344-45 (8th Cir. 1996). Petitioner has shown no cause for his failure to present Dr. Cuneo's affidavit or Bassett's affidavit in state court, nor has petitioner shown any resulting prejudice from application of the procedural bar. Finally, even if the factual portions of the affidavits were admissible in this proceeding, which they are not, Dr. Cuneo's ultimate legal conclusions are not dispositive. Nor is Bassett's conclusion dispositive. The relevant inquiry is not whether Bassett, a then-law student, was effectively assisting petitioner, but rather whether Zvibleman, petitioner's attorney, rendered constitutionally effective assistance of counsel.
In addition, the present claim itself is procedurally barred. Again, petitioner asserts that there is at least an arguable factual commonality between this claim and issues that were properly raised in state court. Trav. p. 19. Upon review of the state court pleadings, both pro se and amended, the *793 Court concludes that petitioner's present claim of ineffective assistance of counsel based on petitioner's trial attorney's failure to prepare a diminished capacity defense was not fairly presented to the state court. In his Rule 29.15 motion, petitioner raised the issue of Zvibleman's refusal to present alibi witnesses and decision to instead proceed on a diminished capacity defense, however, petitioner did not raise a separate claim in state court that his trial counsel failed to adequately prepare the diminished capacity defense. See Resp.Exh. K(1), pp. 189-201; 203-213. Accordingly, the present claim is procedurally barred absent a showing of cause and prejudice or a showing of a miscarriage of justice. Petitioner has made no such showing.
Alternatively, if the Court considered the merits of the present claim, it would be denied. To prevail on a claim of ineffective assistance of counsel, petitioner must show that counsel's assistance fell below an "objectively reasonable standard" and that petitioner was prejudiced as a result. McDonald v. Bowersox, 101 F.3d at 594; Strickland v. Washington, 466 U.S. at 687. Zvibleman's testimony at the hearing on petitioner's Rule 29.15 motion shows that trial counsel's actions in investigating and preparing the diminished capacity defense were reasonable. Zvibleman testified that after Dr. Cuneo opined that petitioner was mildly retarded, he "called maybe thirty psychiatrists and psychologists who had been recommend to [him] by various attorneys." Resp.Exh. J, p. 295. A second clinical psychologist, Dr. Michael Armour, was hired and testified at trial along with Dr. Cuneo. Tr.Tran. Vol. VIII, pp. 1-116. Petitioner has failed to show that his counsel's assistance in preparing a diminished capacity defense fell below an objective standard of reasonableness or that he was prejudiced as a result. For all the reasons indicated above, the Court finds Ground III.B.3 to be without merit, and all relief on that ground will be denied.

Ground III.B.4.: Failure to Present Alibi Defense.
Petitioner alleges that his trial counsel did not provide effective assistance when, contrary to petitioner's wishes, counsel failed to present an alibi defense. Petitioner raised this claim in state court in his Rule 29.15 motion. In affirming the decision of the circuit court denying relief on this claim, the Missouri Supreme Court stated:
Leisure first alleges ineffective assistance of counsel for refusal to present alibi witnesses and for proceeding with a diminished capacity defense contrary to Leisure's wishes and instructions. The motion court denied this point based on its finding that trial counsel's decision was reasonable trial strategy.
Leisure claims that his trial counsel failed to call alibi witnesses, Elmer Lawson and Sandra Bradford (Leisure's sister-in-law). Both witnesses testified at the evidentiary hearing, relating that they were with Leisure on the day of the bombing. The essence of Lawson's testimony was that he was with Leisure from approximately 9:30 or 10:00 a.m. until Leisure left to go help Sandra Bradford with her car sometime after 12:30 p.m. Sandra Bradford testified at the evidentiary hearing that she called Leisure around 12:00 or 12:30 p.m. but was unable to reach him. She called back an hour later and asked him to meet her after work to look at her car. Bradford testified that Leisure was waiting for her in the parking lot when she got off work at 4:00 p.m.
Leisure's trial attorney, Alan Zvibleman, clearly investigated an alibi defense in the instant case. Both Sandra Bradford and Elmer Lawson testified at the evidentiary hearing that Zvibleman had contacted them. Jerry Bassett, then a non-attorney who assisted Zvibleman, also interviewed these potential witnesses.
At the evidentiary hearing, Zvibleman testified that he made a decision not to call Bradford or Lawson only weeks before the actual trial commenced. Zvibleman had received a psychological evaluation from Dr. Cuneo indicating Leisure was borderline mentally retarded. After Dr. Armour, head of forensic psychology at Malcolm Bliss Hospital, agreed with Dr. Cuneo's assessment of Leisure's mental capacity, *794 Zvibleman decided that Leisure had a viable diminished capacity defense.
Counsel met with Leisure to discuss the options for defense. The record demonstrates Leisure's initial reluctance to drop the alibi defense. Zvibleman strongly advised pursuing diminished capacity (to the exclusion of alibi) based on his belief that the alibi witnesses were not credible and that it would be a tactical mistake to present both defenses  alibi and diminished capacity. See State v. Stepter, 794 S.W.2d 649, 657 (Mo.1990) (counsel was not ineffective for failing to present defenses of alibi and self-defense since the defenses were inconsistent).
Leisure v. State, 828 S.W.2d at 874-75. The Missouri Supreme Court stated that the circuit court's finding that Zvibleman's decision to pursue the diminished capacity defense was a reasonable trial strategy was not clearly erroneous. The court noted that the selection of witnesses and the introduction of evidence are questions of trial strategy and that a decision not to call a witness to testify, as a matter of trial strategy, is virtually unchallengeable. Id. The Missouri Supreme Court continued:
Both Zvibleman and Bassett testified at the evidentiary hearing that neither Bradford nor Lawson appeared credible. For example, Lawson insisted that he worked for Leisure prior to the bombing, but maintained that his employment commenced in 1985 or 1986. The record is clear that the bombing occurred in 1980.
Additionally, the testimony of Bradford and Lawson did not account for Leisure's whereabouts for a significant period of time on the day of the bombing. If a potential witness's testimony would not unqualifiedly support a defendant, the failure to call such a witness does not constitute ineffective assistance of counsel. Hamilton v. State, 770 S.W.2d 346, 348 (Mo.App. 1989).
Id. at 875. The court concluded that based on the shortcomings in the testimony of Lawson and Bradford, petitioner's trial counsel was not ineffective in his choice of trial strategy. Id.
A state court's decision regarding a claim of ineffective assistance of counsel is a mixed question of law and fact. Couch v. Trickey, 892 F.2d 1338, 1341 (8th Cir.1989). The question of whether petitioner's constitutional rights were violated because he received ineffective assistance of counsel is reviewed de novo; however, "[t]he state court's underlying factual finding related to counsel's performance and prejudice to the defendant are entitled to the presumption of correctness as set forth in 28 U.S.C. § 2254(d)." Driscoll v. Delo, 71 F.3d 701, 706 (8th Cir. 1995); Amrine v. Bowersox, 128 F.3d 1222, 1228 (8th Cir.1997); 28 U.S.C. § 2254(d) (1994).[14]
Upon review of the record, the Court concludes that the state court's findings are amply supported by the record. At the hearing on petitioners' Rule 29.15 motion, Zvibleman testified extensively as to why the decision was made to pursue a diminished capacity defense and not an alibi defense. Resp.Exh. J., pp. 294-98. Trial counsel did not act unreasonably in deciding not to proceed with the alibi defense but instead to present a diminished capacity defense. Strickland v. Washington, 466 U.S. at 687.
Petitioner alleges that counsel's error in failure to present an alibi defense was compounded by counsel's failure to present Kenneth Loewe's written confession, infra Ground VI.B.1. and his failure to present the testimony of Richard Sellman, infra Ground VI.B.2. Petitioner asserts that this cumulative error makes it "reasonably probable that a jury presented with the alibi defense would not have convicted Petitioner of capital murder." Amended Pet. p. 38. Petitioner's cumulative error claim fails. Cumulative error is not grounds for habeas relief because *795 "each habeas claim must stand or fall on its own." Girtman v. Lockhart, 942 F.2d 468, 475 (8th Cir.1991) (citing Scott v. Jones, 915 F.2d 1188, 1191 (8th Cir.1990)). Thus, the Court will deny all relief based on Ground III.B.4 of the Amended Petition.

D. Ground IV: The Conviction and Death Sentence Imposed Upon Petitioner Violated his Rights Under the Fifth, Sixth, Eighth and Fourteenth Amendments Because Petitioner Received a Constitutionally Defective and Fundamentally Unfair Trial.

Ground IV.A.: Petitioner was Denied His Right to an Impartial Jury.
Petitioner alleges that he was denied due process of law under the Fourteenth Amendment because the jury that convicted him and sentenced him was not impartial. Petitioner's three-fold claim is that: (1) the trial court erred in denying his motion for a change of venue; (2) the trial court erred in denying his request for individual and sequestered voir dire; and (3) jurors J. Warner and J. Fuller were biased.

Ground IV.A.1.: Denial of Motion for Change of Venue.
Petitioner alleges that he was denied his right to due process which requires that the Sixth Amendment's guarantee of impartiality among jurors not be compromised by pretrial publicity. Amended Pet., pp. 38-41; see Sheppard v. Maxwell, 384 U.S. 333, 351-53, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). Petitioner's trial commenced in the Circuit Court for the City of St. Louis on March 30, 1987. The car bombing which killed Jimmy Michaels occurred on September 17, 1980. Petitioner has provided the Court with hundreds of pages of photocopied newspaper articles from the St. Louis Post Dispatch and the St. Louis Globe Democrat dating from 1980 to 1986. Pet.Supp.App. Vols. I & II; Pet.Exh. 8.[15] Petitioner characterizes the compendium of newspaper articles as evidence of "a steady stream of stories about Petitioner and his family members and their alleged involvement in Mafia `warfare.'" Amended Pet., p. 39. In support of his argument that a change of venue should have been granted, petitioner asserts that other defendants on trial for the various car bombings and related crimes which took place in the early 1980s received a change of venue from St. Louis based upon the potential prejudice from pretrial publicity. Petitioner also argues that based upon the inflammatory pretrial publicity that "saturated the St. Louis community," the Court should presume prejudice. Id.
First, petitioner is not entitled to a presumption of prejudice. "Prejudice may be presumed from pretrial publicity when pretrial publicity is sufficiently prejudicial and inflammatory and the prejudicial pretrial publicity saturated the community where the trials were held." Snell v. Lockhart, 14 F.3d 1289, 1293 (8th Cir.1994) (internal citations omitted). The Eighth Circuit has been extremely reluctant to presume prejudice from pretrial publicity, noting that the principle is "rarely applicable, being reserved for extreme situations." Id. The Eighth Circuit has observed that the cases in which prejudice has been presumed from pretrial publicity were found to be exceptional "not because of the amount of publicity but rather because of the `circus atmosphere' of the trial proceedings themselves." Id.
The Court has reviewed the submitted newspaper articles as well as petitioner's allegations regarding the prosecutor appearing on a local television station in 1982, after petitioner's initial arrest. Amended Pet., p. 40. The media coverage in question, although extensive, was not so inflammatory as to require a presumption of prejudice. Many of the articles in question do not directly pertain to petitioner; many of the articles discuss the related federal RICO trial which occurred in the spring of 1985. Petitioner's trial in state court took place from March 30, 1987 through April 9, 1987  approximately *796 six and one-half years after the crime in question and two years after the federal RICO trial. When analyzing the potential prejudice resulting from pretrial publicity, the Eighth Circuit has "recognized the benefits of a cooling off period." Snell v. Lockhart, 14 F.3d at 1294 (citing cases involving cooling off periods of seven and ten months). Petitioner has not provided the Court with evidence of any pretrial publicity for several months before his trial.[16] The media coverage was not so inflammatory as to require a presumption of prejudice.
Petitioner raised his claim of denial of his right to an impartial jury based upon pretrial publicity in state court. In affirming the denial of his direct appeal, the Missouri Supreme Court stated:
Rule 32.04(b) requires that motions for change of venue in felony cases be filed within thirty (30) days of arraignment. Appellant did not file his motion for change of venue until nearly two years after the arraignment and less than three weeks prior to trial. We thus review the trial court's denial of appellant's motion for plain error and will reverse only for manifest injustice. Rule 30.20.
The eighty-one prospective jurors comprised the venire panel in this case. More than a third of the panel had either not heard of the crime or recalled hearing nothing about it in more than six and one-half years between the murder and the trial. Several members of the venire remembered little or no detail of what they had heard or read. The trial judge struck sixteen veniremen for cause because of pretrial publicity.
***
Our review of the exposure of the venire to publicity does not indicate a level of prejudice resulting from publicity which rendered a fair trial impossible in this case.
State v. Leisure, 749 S.W.2d at 376. The Court found no manifest injustice in the trial court's refusal to grant a change of venue. Id.
Pretrial publicity exposure does not automatically taint a juror and widespread publicity is not itself grounds to grant a change of venue. See Mastrian v. McManus, 554 F.2d 813, 817-18 (8th Cir.1977); Graham v. Mabry, 645 F.2d 603, 608-11 (8th Cir.1981); Snell v. Lockhart, 14 F.3d at 1294. The grant or denial of a motion for a change of venue lies within the trial court's discretion. Refusal to grant such a motion generally will not be set aside absent an abuse of that discretion. In a habeas proceeding, the inquiry into a state court's denial of a motion to change venue is limited to whether the refusal amounted to a denial of the petitioner's constitutional rights. Orsini v. Wallace, 913 F.2d 474, 482 (8th Cir.1990).
It is undisputed that the media coverage about this case and related cases was extensive. The trial judge accurately estimated that of the 120[17] prospective jurors, approximately 95 percent had heard something about this matter in some form from the media or from friends and associates. Tr.Tran. Vol. III, p. 242. Nonetheless, "[t]he determinative inquiry is not ... the amount of publicity but rather the effect that the publicity had on prospective jurors." Orsini v. Wallace, 913 F.2d at 482. Even if a prospective juror has heard about a case and has read allegations of a defendant's guilt, the juror may serve if he or she is capable of laying aside prior impressions and rendering a fair verdict based upon the evidence presented at trial. Id. The trial judge also accurately estimated that only approximately one-third of the entire jury panel had any kind of an opinion. Those who could not set *797 aside their opinion were removed for cause. Tr.Tran. Vol. III, p. 242. "The relevant question is not whether the community remembered the case, but whether the jurors at [petitioner's] trial had such fixed opinions that they could not judge impartially the guilt of the defendant." Patton v. Yount, 467 U.S. 1025, 1035, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984).
On federal habeas review, the state court's determination that the jury was not prejudiced by pretrial publicity and was qualified to hear the case is subject to the presumption of correctness set forth in 28 U.S.C. § 2254(d). "The state court's determination that the jury was not prejudiced by the pretrial publicity and thus impartial is entitled to deference and can be overturned only for `manifest error.'" Swindler v. Lockhart, 885 F.2d 1342, 1347 (8th Cir.1989); see also Patton v. Yount, 467 U.S. at 1037-38; Hill v. Lockhart, 28 F.3d 832, 847-48 (8th Cir.1994); Snell v. Lockhart, 14 F.3d at 1294.
The Court has reviewed the entire voir dire portion of the trial transcript and concurs with the findings of the state court. The voir dire lasted for three trial days and covers over 750 pages of transcript. Tr. Tran. Vols. I-III. Approximately 120 venire-persons were examined. If a potential juror could not set aside his or her views obtained from pretrial publicity, the individual was excused for cause. After the three days of voir dire, the trial court made a record that 37 venirepersons remained qualified as prospective jurors. Although many of the jurors expressed some degree of knowledge of petitioner's case and/or related cases, those who expressed reservations regarding the impact of their prior knowledge on their ability to objectively try the case were excused for cause.
Petitioner has not shown that the pretrial publicity made the public in general and the venirepanel in particular prejudiced against him. Although the voir dire and the newspaper articles provided to the Court demonstrate that there was a great deal of publicity about this case, and related cases, nothing in the record reveals "such hostility to petitioner by the jurors who served in his trial as to suggest a partiality that could not be laid aside." Murphy v. Florida, 421 U.S. 794, 800, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975). The Court finds no manifest error in the state court's decision to deny petitioner's request for a change of venue, thus, all relief requested on Ground IV.A.1 is denied.

Ground IV.A.2.: Denial of Individual and Sequestered Voir Dire.
Petitioner argues that his due process rights and his right to an impartial jury were violated when the trial court refused to grant petitioner's request for individual and sequestered voir dire. Petitioner asserts that when a defendant is tried in a venue in which he received extensive pretrial publicity, voir dire should be conducted individually to avoid contamination of the whole panel.
The trial court began the voir dire proceedings with individual and sequestered voir dire. Tr.Tran. Vol. I. pp. 28-59. After questioning a dozen venirepersons individually, the trial court ended the procedure and informed the venirepanel that the court "continues to learn from experience" and had found that the process which it had began was "too cumbersome." Tr.Tran. Vol. I, p. 59. The trial court informed the panel that they would be addressed in groups. The trial court instructed the panel "not to be swayed by anything a fellow juror might say about publicity" and that "whatever a fellow juror might answer in response to a question should not affect your opinion or how you feel at this point in time." Id. at 60.
In denying petitioner's claim on direct appeal, the Missouri Supreme Court stated:
*** Here, after initially examining twelve veniremen individually on matters of pretrial publicity, the trial court found the exercise counterproductive. Thereafter, the court divided the remaining panel into groups of 20 or 24 for the conduct of voir dire. "This procedure was within the trial court's discretion." State v. Guinan, 665 S.W.2d 325, 329 (Mo. banc 1984), cert. denied, 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984). The record exhibits no evidence that this procedure produced any prejudice.
State v. Leisure, 749 S.W.2d at 376.
In reviewing the method of voir dire examination conducted in cases tried *798 before a state court, this Court's authority "is limited to enforcing the commands of the United States Constitution." Mu'Min v. Virginia, 500 U.S. 415, 422, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991). Moreover, the trial court's conclusion that the jury was not prejudiced by remarks made during the voir dire is a factual determination entitled to the statutory presumption of correctness. 28 U.S.C. § 2254(d); Byrd v. Armontrout, 686 F.Supp. 743, 764 (E.D.Mo.1988), aff'd, 880 F.2d 1 (8th Cir.1989); Wright v. Lockhart, 914 F.2d 1093, 1101 (8th Cir.1990).
The record supports the trial court's finding that the voir dire did not result in a partial jury. The Court has reviewed the entire voir dire, giving particular attention to those sections highlighted by petitioner. Based upon the Court's own review of the voir dire as a whole, disregarding any presumption of correctness, the Court concludes that the record is void of any evidence of a venireperson who was prejudiced by a fellow venireperson's prior knowledge of the case. The trial court's denial of petitioner's request that the voir dire regarding the pretrial publicity be conducted on an individual basis did not deny petitioner his rights under the Sixth or the Fourteenth Amendments. This claim for relief is denied.

Ground IV.A.3.: Petitioner was Tried and Convicted by Biased Jurors J. Warner and J. Fuller.
Petitioner alleges that he is entitled to habeas relief because two jurors were biased against him. Respondents argue that this claim is procedurally barred. On direct appeal, petitioner did not raise the instant claim that the presence of jurors J. Warren and J. Fuller denied him of his right to a fair trial and an impartial jury. Resp.Exh. M.
In response to respondents' assertion that this claim is procedurally barred, petitioner points to his pro se and amended Rule 29.15 motions and the subsequent appeal. Trav. pp. 27-28. In his pro se and amended Rule 29.15 motions, petitioner alleged that he received ineffective assistance of trial counsel as a result of his attorney's failure to inform the trial judge in a timely manner that juror J. Warner was currently in or had recently been involved in a relationship with petitioner's ex-girlfriend, Melinda Corbin. Resp. Exh. K(1), pp. 192, 212. Petitioner also alleged that he was denied his right to be present at all critical stages of the trial, specifically during the peremptory strikes, and that his counsel was ineffective for failing to ensure petitioner's presence and in failing to strike juror J. Fuller, who had supervised the victim's grandson while employed at Anheuser Busch. Id. at 192. Petitioner also raised these claims on appeal of the denial of his postconviction motions. Resp.Exh. C, pp. 56-60, 66.
Upon review of the pleadings before the state court (including petitioner's direct appeal, petitioner's pro se and amended Rule 29.15 motions and the subsequent appeals), the Court finds that this claim is procedurally barred. Neither the legal theory nor the facts necessary to analyze this claim were presented to the state courts. Ford v. Armontrout, 916 F.2d at 460; Krimmel v. Hopkins, 44 F.3d 704, 708 (8th Cir.1995).
Petitioner alleges that the cause of his failure to raise this claim in the state courts was ineffective assistance of trial counsel. Trav. pp. 27-28. Petitioner also asserts that he was prejudiced by the denial of his constitutional right to receive a fair and impartial jury. Because petitioner raised his claim of ineffective assistance of counsel for failure to remove jurors J. Warner and J. Fuller in state court, petitioner may have demonstrated cause for his procedural default.[18]Oxford v. Delo, 59 F.3d at 747 (a claim of ineffective assistance of trial counsel may be used to establish cause for a procedural default only where petitioner raised the ineffective assistance claim in state court). Nonetheless, petitioner has not shown actual prejudice. Because petitioner has failed to demonstrate cause and prejudice or the applicability of the miscarriage of justice exception to excuse his procedural default, his claim is procedurally barred. Nonetheless, the Court will, in the *799 alternative, address the merits of both subclaims.
Juror J. Warner: Shortly before trial, petitioner learned that juror J. Warner was currently in or had recently had a relationship with Melinda Corbin, petitioner's ex-girlfriend with whom petitioner has a child. Depo. of Pet.Exh. K(2), pp. 49-51. In addressing petitioner's claim of ineffective assistance of counsel for failure to inform the trial judge of Warner's relationship with Corbin, the Missouri Supreme Court stated:
*** Virginia Graham, Leisure's aunt, testified at the evidentiary hearing that Leisure's eight-year-old daughter, Amanda, identified Warner as someone she had seen with her mother, Melinda Corbin. Graham testified that she brought this to trial counsel's attention several times during the trial, as did Leisure.
Zvibleman spoke with Melinda Corbin over the telephone but she refused to come to court to identify Warner and would not say whether she even knew a person by that name. Zvibleman did not bring the matter to the court's attention during the trial since he could not independently verify the information. He advised the court at the time of sentencing of Warner's possible bias.
The motion court found there was no evidence that Warner either withheld information when questioned on voir dire, or was aware of Leisure's association with Melinda Corbin. Even friendship with a witness would be insufficient, in and of itself, to disqualify a venireperson; an actual bias against the litigant must be shown. State v. Johnson, 721 S.W.2d 23, 31 (Mo.App.1986). Warner's alleged relationship with Corbin, even if true, would not necessarily show bias. Ms. Corbin was not a witness at trial and there was no indication that Warner was aware of a relationship between Leisure and Corbin. This point is speculation unsupported by any substantive evidence. The motion court's finding that Zvibleman's actions with respect to juror Warner were reasonable is not clearly erroneous.
Leisure v. State, 828 S.W.2d at 876. The state court's finding that Zvibleman's actions were reasonable included a finding that it was only speculation that Warner was aware of any relationship between Leisure and Corbin. The parties dispute whether this is a finding of fact entitled to the statutory presumption of correctness. 28 U.S.C. § 2254(d). Even absent a statutory presumption of correctness, based upon an independent review of the voir dire of juror J. Warner, the Court reaches the same conclusion. Tr.Tran. Vol. I; pp. 246-248.
Additionally, the Court has reviewed all of the voir dire testimony and the testimony at the hearing on petitioner's Rule 29.15 relating to juror J. Warner. Petitioner has not demonstrated that juror J. Warner was aware of any relationship between petitioner and Corbin, nor has petitioner shown that juror J. Warner was biased against him. Petitioner's claim is without merit.
Juror J. Fuller: J. Fuller was a co-employee of John Michaels  the victim Jimmy Michaels' grandson. At the beginning of voir dire, J. Fuller volunteered that he supervised John Michaels while employed at Anheuser Busch. Tr.Tran. Vol. I, p. 8. Fuller was extensively questioned about this relationship. Tr.Tran. Vol. I, p. 179-80 & Vol. IV, pp. 1-4. Petitioner's claim that J. Fuller was a "possible friend" of John Michaels is without merit. Amended Pet., p. 43. Fuller unequivocally stated that outside of the work environment, he was not friends with John Michaels. Tr.Tran. Vol. IV, p. 1. When Fuller worked the day shift he saw John Michaels two or three times a day, however, Fuller estimated that he had only spoken to John Michaels twice in fifteen years. Id. at 2. Petitioner has presented no evidence of juror J. Fuller's alleged bias against him. Petitioner's claim is without merit. For all of the foregoing reasons, all of the relief requested in Ground IV.A.3 is denied.

Ground IV.B.: Unconstitutional Selection of Jurors.
Petitioner asserts the following five reasons why the selection of the jury was unconstitutional.

*800 Ground IV.B.1.: Trial Court's Refusal to Strike for Cause Members of the Venire Who Had Already Formed an Opinion as to Petitioner's Guilt and Could Not Set that Opinion Aside.
Petitioner alleges that the trial court abused its discretion in overruling petitioner's challenge for cause to venireperson Zewiski. Petitioner recognizes that the trial court's decision as to whether a venireperson should be dismissed for cause is entitled to a statutory presumption of correctness. 28 U.S.C. § 2254(d); Patton v. Yount, 467 U.S. at 1036. Nonetheless, petitioner argues that he has overcome this presumption because the trial court's decision is not supported by the record.
The Missouri Supreme Court set forth the relevant portion of the voir dire of venireperson Zewiski, and, to fully understand the exchange, the court will again do so here:
MR. ROGERS [The prosecutor]: You have formed an opinion; is that correct?
VENIREMAN ZEWISKI: Yes.
MR. ROGERS: And that opinion you formed, can you set that opinion aside if you were a juror in this case and base your decision solely on the testimony?
VENIREMAN ZEWISKI: No, I don't think I'd make a good juror on this particular case.
MR. ROGERS: Well, is there something about this particular case that prevents you from being a good juror, something particular?
VENIREMAN ZEWISKI: Yes.
MR. ROGERS: Would you rather get specific about that up at the bench, or do you think you can keep it pretty general?
VENIREMAN ZEWISKI: Well, I 
MR. ROGERS: Do you know any of the parties involved?
VENIREMAN ZEWISKI: No.
MR. ROGERS: Okay. Is there something about the situation that existed that led to this event that caused you any kind of fear?
VENIREMAN ZEWISKI: No. I just formed an opinion, and that 
MR. ROGERS: Well, now wait. You formed an opinion. Obviously you formed that opinion before you came here today; is that correct?
VENIREMAN ZEWISKI: Oh, I didn't know about this today. So 
MR. ROGERS: Now, that opinion you formed was based on probably a lot of things. Radio, television, and maybe even discussing things with friends of yours?
VENIREMAN ZEWISKI: Yes.
MR. ROGERS: Okay. And do any of your friends have any access to information about the case other than the radio and TV?
VENIREMAN ZEWISKI: Well, some.
MR. ROGERS: Some. Okay. Do you have any friends that are related or participated in judicial enforcement, law enforcement?
VENIREMAN ZEWISKI: No.
MR. ROGERS: Do you have any friends that know people on either side of this matter?
VENIREMAN ZEWISKI: Yes.
MR. ROGERS: Okay. Now, those individuals, I take it that you respect them and the fact that they're friends of yours.
VENIREMAN ZEWISKI: Yes.
MR. ROGERS: And you would expect that friends of yours would talk to you and tell you what they believe to be the truth; is that correct?
VENIREMAN ZEWISKI: Yes.
MR. ROGERS: Now, with that in mind, though, do you understand that in the courtroom, you've got testimony, and it's different than sitting around at somebody's dinner table and talking about what I heard so and so said. And what somebody down at the union hall told me was happening. Here you have people that have to stand scrutiny by both sides. People have to answer questions in a very technical environment. We have rules we ask questions by, and we have attorneys that can put those people up to what they call a crucible, put them in there and really examine them. And when you watch this whole thing occur, you have to make some kind of decision based on what you hear.

*801 And it may come that you find out that your friend who told you that he heard so and so happened was just full of hot air. I mean you had this information from the wrong source. You know, it happens.
VENIREMAN ZEWISKI: Yes.
MR. ROGERS: With that in mind, that's what I'm saying. Could you listen to testimony and listen to it in an unbiased manner?
VENIREMAN ZEWISKI: Well 
MR. ROGERS: And if you found out it contradicted with what your next-door neighbor said, say "Well, sorry, Betsey, you're out of luck. I heard what happened under oath, and this is the way I rule." That's what I'm asking you about.
VENIREMAN ZEWISKI: Right. Yes.
MR. ROGERS: Nobody likes to be on jury duty and particularly people don't like to be on capital murder cases. Okay. There's nothing nice or fun about it. But all I want to know is if you feel you can do your duty if you have to.
VENIREMAN ZEWISKI: If I have to.
***
MR. ZVIBLEMAN: You said you can't set your opinion aside or you can?
VENIREMAN ZEWISKI: I don't think so.
MR. ZVIBLEMAN: Okay. Okay. Now, I understand that you went through a long discourse with Mr. Rogers on this, and I don't want to repeat all of it. I just need to know from your gut and from your heart whether you can 
VENIREMAN ZEWISKI: I don't know if I could completely get it out of my mind.
MR. ZVIBLEMAN: Okay. Do you think that may still influence you in some way?
VENIREMAN ZEWISKI: Yeah, I do.
MR. ZVIBLEMAN: Okay. Thank you.
Tr.Tran. Vol. I, pp. 135-38, 175-76.
During the first of the two foregoing exchanges, venireperson Zewiski stated that she would do her duty if she had to. Thus, the trial judge determined not to strike her for cause. Tr.Tran. Vol. I, pp. 196-97. The Missouri Supreme Court stated that they could not fault the trial judge for crediting venireperson Zewiski's earliest testimony in which she said that she could set her opinion aside "if she had to," rather than her later testimony "in which defense counsel persuaded her that logically she would need evidence to discard any opinion she might have." State v. Leisure, 749 S.W.2d at 372 (internal citation omitted).
"On review of a habeas petition, this Court is limited to examining the responses of the impaneled juror for evidence of prejudice of constitutional magnitude." Wood v. Lockhart, 809 F.2d 457, 461 (8th Cir.1987). Petitioner claims that he was prejudiced by the trial court's failure to strike venireperson Zewiski for cause because he was forced to use one of his limited peremptory challenges to strike venireperson Zewiski when she should have been stricken for cause. Trav. p. 30. Petitioner's claim of prejudice fails because venireperson Zewiski was not ultimately selected as a member of the petit jury. Ross v. Oklahoma, 487 U.S. 81, 89-90, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988) (rejecting any notion that the loss of a peremptory challenge constitutes a violation, of the constitutional right to an impartial jury); Sloan v. Delo, 54 F.3d 1371, 1387 n. 16 (8th Cir.1995). Furthermore, the voir dire testimony does not reveal any prejudice of a constitutional magnitude. Rather, there is fair support in the record of the impartiality of venireperson Zewiski. The claim is denied.

Ground IV.B.2.: Trial Court's Refusal to Strike for Cause Members of the Venire Who Did Not Have the Ability to Consider Alternative Punishments in a Death Penalty Case.
Petitioner alleges that the trial court erred in refusing to strike for cause venirepersons Chenoweth and Dixon. A prospective juror is to be excluded for cause because of his or her views on capital punishment if the juror's views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Wainwright v. Witt, 469 U.S. 412, 424, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). Again, petitioner argues that the state court's decision is not entitled to the statutory *802 presumption of correctness and should be set aside because it lacks support in the record.
Venireperson Chenoweth: In affirming the denial of petitioner's claim that the trial court erred in overruling petitioner's challenge for cause as to juror Chenoweth, the Missouri Supreme Court stated:
Chenoweth initially stated a strong preference for the death penalty. She believed that it is a burden for taxpayers to feed and clothe a person sentenced to life imprisonment. She elaborated, however, "I do believe the punishment should fit the crime. Whether it be a capital murder or the death penalty or life, I would have to weigh that very, very carefully. Without a reasonable doubt in my mind."
Appellant's counsel asked: "Could you, after the guilt phase, could you consider the mitigating circumstances, things about David, possibly, that could change your mind from imposing the death penalty?" Chenoweth responded, "After I listen to the law that the judge issued, it would be a decision then." Appellant's counsel inquired further, "But you could follow his instructions by considering both the death penalty and life imprisonment?" Chenoweth stated, "Yes, it would be very difficult. Yes, I suppose so."
Later, the following exchange took place between the prosecutor and Chenoweth.
MR. ROGERS: That's what I think he's getting to. Can you consider life in those  in some circumstances? And obviously if I didn't prove he merited death, you would then consider life?
VENIREMAN CHENOWETH: Yes, as an alternative.
MR. ROGERS: Even though you're not particularly happy with that punishment?
VENIREMAN CHENOWETH: No.
MR. ROGERS: It is something that under the law you would consider. Is that fair?
VENIREMAN CHENOWETH: That's fair.
MR. ROGERS: Is it accurate?
VENIREMAN CHENOWETH: It's accurate, yes, sir. You spoke it better than I could.
In order to clarify its understanding of her position, the trial court inquired: "Now again, I have to ask Ms. Chenoweth ... would you ... based on that, consider both types of punishment if you were selected as a juror and if you got to that point in the proceedings?" Chenoweth responded, "Yes, sir. If we did."
***
We do not fault the trial judge for believing Chenoweth's final, unequivocal answer.
State v. Leisure, 749 S.W.2d at 374.
The Court has again reviewed all of the relevant portions of the voir dire testimony. Tr.Tran. Vol. II, pp. 224-28, 237-39, 248-49. Chenoweth gave candid answers and stated that if defendant was found guilty of capital murder, she would be able to look at the facts proven by the prosecutor and vote for the death penalty or vote for the alternative punishment of life imprisonment. The trial court's finding is supported by the record and thus entitled to a presumption of correctness. Moreover, even absent such a presumption, Chenoweth's views on the death penalty did not rise to a level that would "prevent or substantially impair the performance of [her] duties as a juror" in accordance with trial judge's instructions and her oath as a juror. Wainwright v. Witt, 469 U.S. at 424.
Petitioner's Sixth Amendment claim also fails because petitioner suffered no prejudice from any alleged error. A Sixth Amendment claim of juror bias must focus exclusively on the jurors who actually sat. Sloan v. Delo, 54 F.3d at 1387 n. 16 (citing Ross v. Oklahoma, 487 U.S. at 89-90). Chenoweth was not ultimately selected as a member of the petit jury. Resp.Exh. B, p. 127. Thus, petitioner can demonstrate no alleged prejudice which would rise to the level of a Sixth Amendment violation.
Venireperson Dixon: Next, petitioner alleges that his rights under the Sixth and Fourteenth Amendments were violated in that the trial court erred in refusing to strike for cause venireperson Dixon. During voir dire, when asked whether he could consider *803 life imprisonment at the penalty phase, Dixon stated:
I could, depending upon the other evidence. Even though  I probably should explain. I'm not a firm believer in life imprisonment. I'm not a firm believer that I believe I should put somebody to death. I just don't believe 50 years without parole is going to serve anybody any services, but I also believe I'm not going to sentence anybody to death if the evidence doesn't say he should die.
Tr.Tran. Vol. II, p. 136. Petitioner argues that Dixon's views on capital punishment prevented him from performing his duties in that he could not realistically consider imposing a life sentence.
Petitioner's claim concerning venireperson Dixon is procedurally barred because petitioner did not present this claim to the state courts. Although petitioner asserts that he has shown the requisite cause (ineffective assistance of counsel) and prejudice (the trial court's failure to strike an unqualified juror forced petitioner to use a peremptory strike) for his procedural default, the Court finds that he has shown neither. In state court, petitioner did not assert a claim of ineffective assistance of counsel based upon trial counsel's error or appellate counsel's alleged error regarding venireperson Dixon, thus, petitioner's belated assertion of ineffective assistance of counsel cannot constitute cause to overcome his procedural default. Oxford v. Delo, 59 F.3d at 747; McKinnon v. Lockhart, 921 F.2d 830, 832 (8th Cir.1990). Additionally, petitioner has shown no prejudice. As stated above, the Supreme Court's decision in Ross v. Oklahoma forecloses petitioner's argument that he was prejudiced by being forced to use a peremptory strike to strike an unqualified juror.
Alternatively, even if the Court considered the merits of petitioner's claim, the trial court's finding that venireperson Dixon was impartial is entitled to a statutory presumption of correctness which petitioner has not overcome. Tr.Tran. Vol. II, pp. 135-137. For all of these reasons, all relief requested in Ground IV.B.2. is denied.

Ground IV.B.3.: Method of Death Qualification was Unconstitutional.
Petitioner asserts that his rights under the Sixth and Eighth Amendments were violated. Amended Pet. p. 51. Petitioner further alleges that he was denied his rights to due process and a fair and impartial jury because the trial court allowed the state to explore specific weaknesses in the state's case and remove certain venirepersons for cause because they could not impose the death penalty in light of those weaknesses. Amended Pet., pp. 48-51. In particular, petitioner argues that venirepersons Fonod, LaChance, Waddell and Latko[19] initially told the trial court that they believed in the death penalty and could impose it, and only after the court allowed the state to discuss the specific facts of the case did these venirepersons state that they could not impose the death penalty.
On direct appeal, petitioner asserted the following point of error:
THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S OBJECTIONS TO THE STATE'S DEATH-QUALIFYING QUESTIONS ON VOIR DIRE AND BY STRIKING FOR CAUSE VENIREMEN FREHSE, CAROL FULLER, DALLAS, HOLTMEYER, BLITT, LATKO, DEWITT, AND DIXON BECAUSE THE PROSECUTOR SOUGHT TO AND DID COMMIT JURORS WITH ANY QUALMS ABOUT CAPITAL PUNISHMENT INTO DECLARING THEMSELVES DISQUALIFIED, ALTHOUGH IT WAS NOT CLEAR THAT THEIR ATTITUDES WOULD PREVENT OR SUBSTANTIALLY IMPAIR THEIR FOLLOWING THE LAW, IN THAT, RATHER THAN CORRECTLY ASKING IF THEY HAD ANY FIXED OPINIONS AGAINST CAPITAL PUNISHMENT, HE INSISTED ON ASKING WHETHER, IN THE PENALTY PHASE OF THIS CASE, THEY COULD VOTE TO PUT APPELLANT DAVID LEISURE TO DEATH. *804 Resp.Exh. M, p. 36. The Missouri Supreme Court affirmed the denial of this claim of error. State v. Leisure, 749 S.W.2d at 373.
In his present claim, petitioner raises the issue of the prosecutor's general "death qualifying techniques" but also specifically alleges error pertaining to venirepersons Fonod, LaChance, Waddell and Latko. Although the legal basis of petitioner's present claim was raised on direct appeal, the factual basis as to each of these venirepersons was not. Petitioner's claims which are specific to venirepersons Fonod, LaChance and Waddell were not fairly presented in state court and thus are procedurally barred.[20] Petitioner has not asserted cause and prejudice for his failure to raise his claim regarding these venirepersons, nor does petitioner assert a resulting miscarriage of justice.
On direct appeal, the Missouri Supreme Court addressed petitioner's general claim regarding the prosecutor's so-called "death qualifying" techniques and his claim regarding venireperson Latko:
In support of his general claim that the prosecutor's "method of death qualification was unconstitutional," petitioner relies upon State v. Tarkington, 794 S.W.2d 297, 299 (Mo.App.1990) where the Missouri Court of Appeals recognized "the well established rule in Missouri that it is improper to question prospective jurors in a manner which causes them to speculate and commit themselves to a course of action based on certain contingencies which may subsequently occur or arise during the trial." Amended Pet. p. 48. Petitioner relies upon excerpts from the voir dire where the prosecutor informed the panel that they would hear from witnesses who were actual participants in the crime who received a great deal less than the death sentence, and in essence who were "cut deals" in return for their testimony. After the prosecutor informed the jury of this, the following exchanges occurred:
VENIREMAN LATKO: If he's guilty, he's guilty, but I wouldn't go for the death penalty if the other guys got off.
PROSECUTOR ROGERS: Okay. I'm telling you the other people were charged with the same offense and we gave them a lesser punishment and they have avoided the more serious punishment.
VENIREMAN LATKO: That's what I'd go for.
PROSECUTOR ROGERS: Just on that fact alone, do I understand you to say you would never consider the death penalty in this case?
VENIREMAN LATKO: I think they both should get the same thing. He shouldn't get the death penalty because the other people didn't get it.
Tr.Tran. Vol. III, p. 52.
To support his claim of improper voir dire, petitioner relies upon State v. Tarkington. When reviewing a habeas petition, the Court does not analyze whether the trial judge committed an error of state law. Rather, the proper constitutional inquiry in determining whether a potential juror properly has been excused from a case based upon his or her views on capital punishment is "whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Wainwright v. Witt, 469 U.S. at 424.
The trial court's decision to strike venireperson Latko finds support in the record. Tr.Tran., Vol. III, 42-43, 52-53. Moreover, although petitioner's claims regarding venirepersons Fonod, LaChance and Waddell are procedurally defaulted, the voir dire testimony demonstrates that each of these venirepersons properly was removed for cause. Venireperson Waddell expressed his views on capital punishment which would substantially impair his performance as a juror in accordance with his oath as a juror and the court's instructions. Tr.Tran. Vol. III, pp. 61, 133. Venireperson LaChance indicated his relationship with the victim's family which would make it impossible for him to give petitioner a fair trial. Tr.Tran. Vol. III, pp. 35-36, 112. Venireperson Fonod indicated that he attended St. Raymond's Church and that he was in the Missouri *805 National Guard with Detective Thomas Gilyon, one of the state's witnesses. Tr.Tran. Vol. III, pp. 39, 71-72. The trial court did not err in striking each of these venirepersons for cause.
As for petitioner's general allegations regarding the prosecutor's "death qualifying" technique, the Eighth Circuit has noted that "although there are no constitutional provisions directly addressing the use of hypothetical questions during the voir dire," there may be circumstances where a manner of conducting voir dire can deprive a defendant of the Sixth Amendment right to trial by an impartial jury. Hobbs v. Lockhart, 791 F.2d 125, 129 (8th Cir.1986). Upon careful review, however, the Court finds no such violation by the prosecutor's method of voir dire. The prosecutor's examination of the venirepanel regarding the death penalty did not cause any member of the panel to irrevocably commit, before the trial had begun, to vote for or against the death penalty regardless of the facts and circumstances that might emerge in the proceedings. Witherspoon v. Illinois, 391 U.S. 510, 522 n. 21, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); McDonald v. Delo, 897 F.Supp. 1224, 1260 (E.D.Mo. 1995), aff'd, 101 F.3d 588 (8th Cir.1996). The claim is denied.

Ground IV.B.4.: The Prosecutor Coerced Jurors Who Could Properly Serve on the Jury into Declaring Themselves Disqualified.
In his next claim, which the Court finds to somewhat overlap with his previous claim, petitioner alleges that the jury selection was unconstitutional because the prosecutor convinced jurors whose views on capital punishment would not prevent their ability to perform as jurors  venirepersons Latko, Frehse, Dallas, Holtmeyer, Blitt and DeWitt  into declaring themselves disqualified. On direct appeal, the Missouri Supreme Court affirmed the denial of petitioner's claim:[21]
Even from the sterility of the printed page, the record shows that the veniremen about whom appellant complains expressed substantial reservations about their ability to consider the death penalty in the context of this case. Appellant's trial counsel preserved error in his motion for new trial with regard to but one of these venireman, Stanley Latko. Our review of the trial court's strikes of all but Mr. Latko is under the plain error standard. Rule 30.20.
Appellate courts necessarily afford the trial judge broad discretion in matters of challenges for cause. The trial court maintains a far superior position to interpret and evaluate the totality of a venireman's answers and demeanor than does an appellate court. We find no plain error nor manifest injustice in the trial court's strikes of the seven veniremen where error was not preserved.
As to Latko, after a general statement to the venire that this case involved state's witnesses who had entered plea bargain agreements, the prosecutor inquired, "Do you feel you can't consider the death penalty for this man because we let somebody else get less than that?" Latko responded, "I think they should have got the same thing." Later Latko said, "If he is guilty, he is guilty, but I wouldn't go for a death penalty if the other guys got off."
There is simply no error in the trial judge's determination that Latko be struck for cause. He clearly and unequivocally refused to consider the death penalty under the circumstances of this case.
State v. Leisure, 749 S.W.2d at 374-75. Petitioner asserts that the trial court's dismissal of venirepersons Latko, Frehse, Dallas, Holtmeyer, Blitt and DeWitt is not supported by the record, thus the trial court's decision to strike each of these six jurors for cause is not entitled to the statutory presumption of correctness. 28 U.S.C. § 2254(d); Patton v. Yount, 467 U.S. at 1036.
The factual findings of the trial court that venireperson Latko was unable to consider the full range of punishment is supported by the record and is entitled to a statutory presumption of correctness. Tr.Tran. Vol. *806 III, p. 52 (venireperson Latko stating his view that petitioner should not be sentenced to death if others with the same culpability were not sentenced to death). Petitioner has not overcome the presumption of correctness. Thus, his claim regarding venireperson Latko is denied.
The Court's independent review of the trial transcript reveals that each of the remaining venirepersons in question was properly excused for cause. Tr.Tran. Vol. II, pp. 18-22, 40-42, 59-64, 70 (Venireperson Frehse expressing his inability to consider the full range of punishment); Tr.Tran. Vol. II, pp. 150-151, 169-170, 175, 190-192 (Venireperson Dallas stating her inability to impose the death penalty); Tr.Tran. Vol. II, pp. 205-206, 220, 246 (Venireperson Holtmeyer expressing his inability to impose the death penalty); Tr.Tran. Vol. III, pp. 168-171, 188-190, 192 (Venireperson Blitt stating that he could not agree to vote in favor of the death penalty); Tr.Tran. Vol. II, pp. 162-163, 181-183; Vol. III, p. 54 (Venireperson DeWitt stating his inability to impose the death penalty). The sworn testimony of these venirepersons adequately shows that each had views which would prevent or substantially impair his or her performance as a juror in accordance with the court's instructions and the juror's oath. Wainwright v. Witt, 469 U.S. at 424. Petitioner's claim is denied.

Ground IV.B.5.: The Court Allowed the State to Minimize the Standard of Reasonable Doubt During Voir Dire.
Petitioner alleges that the trial court allowed the state to minimize the standard of reasonable doubt during voir dire "by allowing the prosecutor to constantly make speeches to the jurors as to how the state only needed to convince the jurors, based on their common sense, that Petitioner was guilty." Amended Pet., p. 59. Petitioner failed to raise this claim in state court. Petitioner asserts that the cause of his procedural default was "ineffective assistance of counsel;" petitioner does not specify "trial counsel" or "appellate counsel." Trav. p. 34. Petitioner also alleges that he was prejudiced as a result of the unconstitutional voir dire.
As previously stated, a claim of ineffective assistance of trial counsel may be used to establish cause for a procedural default only where petitioner raised the ineffective assistance claim in state court. Oxford v. Delo, 59 F.3d at 747. Similarly, ineffective assistance of appellate counsel may be used to establish cause for procedural default only if the claim was first presented to the state court as an independent Sixth Amendment claim. McKinnon v. Lockhart, 921 F.2d at 832. Petitioner did not assert this claim of ineffective assistance of counsel in state court. Thus, petitioner has failed to show cause for his failure to raise this claim in state court. In addition, petitioner has failed to demonstrate resulting prejudice or the applicability of the miscarriage of justice exception. This claim is procedurally barred.
If the Court were to reach the merits of this claim, it would be denied. Although petitioner stated that the prosecutor "constantly made speeches" during voir dire, in support of his claim, he refers only to the following portion of the voir dire:
In a criminal case, I've got the burden of proving everything, okay? I'm the person that's got to come in here and convince the people that are jurors it happened the way I said it happened. And there is a standard that I have to make, and that's called a standard of beyond a reasonable doubt.
If you listen to that instruction that the judge read, that's a doubt based on common sense. Okay? A reasonable doubt, a doubt  a reasonable doubt would have to leave you without that firm conviction that the guy did it Okay?
Tr.Tran. Vol. III, p. 165. Even if the prosecutor's remarks were improper under state law, an issue which this Court does not consider on habeas review, the comments did not deny petitioner of a constitutional right under the Fifth, Sixth, Eighth or Fourteenth Amendment. The jury was given an instruction which properly defined reasonable doubt. Resp.Exh. B, p. 92, Instruction No. 4. The prosecutor's comments did not so infect the trial as to make petitioner's trial or sentencing fundamentally unfair. Williams v. Groose, 77 F.3d 259, 262 (8th Cir.1996) (citing Anderson v. Goeke, 44 F.3d 675, 679 *807 (8th Cir.1995)). All claims for relief on this Ground will be denied.

Ground IV.C.: Unconstitutionally Erroneous Admission of Evidence.
Petitioner alleges that the state court "committed a myriad of prejudicial evidentiary errors." Amended Pet., p. 59. "A state court's evidentiary ruling will warrant the issuance of a habeas writ where the asserted error resulted in the denial of due process." Wood v. Lockhart, 809 F.2d at 460. Petitioner alleges three specific evidentiary errors.

Ground IV.C.1.: The Trial Court Erred By Admitting Into Evidence the Names of the Victims of Crimes Committed by the Co-Conspirators.
Petitioner alleges that he was denied his constitutional right to due process by the trial court's admission into evidence of the names of the victims of other crimes in which the testifying co-conspirators, John Ramo and Joseph Broderick, were involved. Petitioner alleges that this testimony was "improper evidence of alleged `other crimes' presented in an attempt to prove that Petitioner had acted in conformity to them in this case in spite of the uncontroverted fact that the other `crimes' occurred after the Jimmy Michaels bombing in September of 1980." Amended Pet., p. 61.
Ramo and Broderick were state witnesses and, in exchange for their testimony, each received reduced sentences. Upon direct-examination, the State questioned Ramo regarding the activities relating to the Jimmy Michaels' bombing. The prosecutor elicited the fact that Ramo was given a reduction in his charge of capital murder and a recommendation for 15 years in prison in exchange for his testimony. Tr.Tran. Vol. IV, p. 221. During cross-examination, petitioner's trial counsel further questioned Ramo regarding his arrangement with the state of Missouri and/or the federal government which involved him testifying in exchange for a reduced sentence. Tr.Tran. Vol. IV, pp. 220-26. Upon re-direct examination, the prosecutor elicited the names of the victims of the other crimes in which Ramo and Broderick were involved, including John Michaels, Sonny Faheen and Michael Kornhardt. Tr.Tran. Vol. IV, pp. 283-84.
Similarly, the state questioned Broderick regarding the Jimmy Michaels bombing and, during cross-examination, Broderick stated that he was testifying in exchange for reduced charges and sentences. Tr.Tran. Vol. V, pp. 142-54. On re-direct examination, the state elicited the names of Broderick's victims in other crimes in which he was involved. Tr.Tran. Vol. V., p. 154.
On direct appeal, in rejecting petitioner's claim that this evidence created an inference of petitioner's involvement in other crimes, the Missouri Supreme Court stated:
Ramo and Broderick pleaded guilty to second degree murder in exchange for their testimony against appellant. Together with their families, they were placed in the federal witness protection program. On cross-examination, appellant's counsel inquired of Ramo whether he considered other assaults and murders on which he "had possible exposures ... [w]hen you made your deal, you were thinking about your potential liability in cases, correct?" The obvious implication of this testimony was that Ramo's favorable testimony was not trustworthy because it was given in return for the state's leniency on several additional murders and/or assaults which he committed.
In response, the prosecutor inquired of Ramo on redirect examination:
MR. ROGERS: Now, Mr. Ramo, I don't want you to talk about who was involved in these events, but you've been given a benefit by not facing the death penalty, is that correct?
MR. RAMO: Yes.
MR. ROGERS: And in return you've had to provide information about people that were involved in other incidents, correct?
MR. RAMO: Yes.
MR. ROGERS: One of those incidents was the bombing that led to the burning to death in a car of George Faheen, is that correct?
MR. RAMO: Yes.

*808 MR. ROGERS: One of those incidents was the bombing death of John Paul Spica, correct?
MR. RAMO: Yes.
MR. ROGERS: One of those events was the shotgun assault of John Charles Michaels, correct?
MR. RAMO: Yes.
MR. ROGERS: And the shotgun assault of Dennis Day that occurred at the same time?
MR. RAMO: Yes.
MR. ROGERS: One of those events was the shooting and execution of Michael Kornhardt; is that correct?
MR. RAMO: Yes.
MR. ROGERS: And you have testified about that in the past, have you not?
MR. RAMO: Yes.
State v. Leisure, 749 S.W.2d at 377.
In analyzing the admission of the above testimony, the Missouri Supreme Court found that beyond the fact that the jury was aware that Ramo and petitioner had been involved in the murder of James Michaels, Sr., there was no evidence in the guilt phase that petitioner participated in any of the other murders or assaults mentioned. Absent such evidence, the court held that the rule excluding proof of other crimes was not applicable and that the evidence was properly admitted on redirect examination. Id. As to Broderick's testimony that he too faced other state charges and that he had been treated with leniency in return for his testimony, the Missouri Supreme Court stated that "[a]gain the prosecutor inquired on redirect into the specific crimes in which Broderick would testify as part of his plea bargain. And again, the prosecutor's questioning was appropriate bolstering." Id. at 377.
The findings of the state court are supported by the record. Nowhere in the testimony of Broderick or Ramo is there a reference to petitioner having participated in any of the crimes to which Ramo and Broderick referred. This claim for habeas relief is without merit.

Ground IV.C.2.: The Trial Court Erred in Excluding Evidence Concerning State Witness Joseph Broderick's Violent Background.
Petitioner alleges that the trial court erroneously excluded relevant evidence by not allowing petitioner's trial counsel to inquire into Joseph Broderick's violent background on cross-examination. Petitioner failed to present this claim on direct appeal, thus he is procedurally barred from presenting this claim for habeas review.
Petitioner concedes that this claim was not raised on direct appeal, but argues that the claim is not procedurally barred because he raised the issue in his motion to recall the mandate which was summarily denied by the Missouri Supreme Court. Contrary to petitioner's assertion, under the circumstances presented here, petitioner's assertion of his claim in a motion to recall the mandate does overcome the procedural bar. In Nave v. Delo, 62 F.3d 1024, 1030 (8th Cir.1995), the Eighth Circuit rejected a petitioner's argument that his claims were not procedurally defaulted stating that "a motion to recall the mandate was an inappropriate procedure for presenting the claims at issue." In Nave, the Eighth Circuit stated:
Under Missouri law, a motion to recall the mandate is permissible in only two circumstances. The first circumstance is when the petitioner alleges ineffective assistance of appellate counsel.
***
The second instance in which a motion to recall the mandate may be filed is when the decision of a lower appellate court directly conflicts with a decision of the United States Supreme Court upholding the rights of the accused.
Id. at 1030 (internal citation omitted). In Nave, the Eighth Circuit found that several of the petitioner's claims were procedurally barred because his motions to recall the mandate were not the proper methods for presenting his claims to the Missouri court. See also Sweet v. Delo, 125 F.3d at 1150 ("A motion to recall the mandate is a proper means of preserving an issue for habeas review only in very limited circumstances, as we explained in Nave .... [i]n particular, we *809 noted that a motion to recall the mandate is not a proper method of raising claims of trial error or ineffective assistance of trial counsel.")
Based upon the foregoing, petitioner's claim that the trial court erred in excluding evidence of Broderick's violent background is similarly procedurally barred. Petitioner offers no cause or prejudice for his failure to present this claim in a timely and procedurally correct manner, nor does petitioner allege a resulting miscarriage of justice. Thus such procedural default bars federal habeas review. This claim is denied.
Alternatively, the claim is without merit. The trial court's decision to limit the admission of evidence regarding Broderick's violent background did not rise to the level of a denial of petitioner's due process rights. Tr. Tran. Vol. V, pp. 135-45. For the foregoing reasons, Ground IV.C.2 is denied.

Ground IV.C.3.: The Trial Court Erred in Refusing to Allow Cross-Examination of State's Chief Witnesses Joseph Broderick and John Ramo as to their Knowledge about Petitioner and His Background.
Petitioner asserts that the trial court's refusal to allow any cross-examination of the knowledge of witnesses Ramo and Broderick regarding petitioner and his background fatally infected the trial and denied petitioner due process. Petitioner's claim is procedurally defaulted. Again, petitioner's argument that the claim is not procedurally barred because he raised the issue in his motion to recall the mandate which was summarily denied by the Missouri Supreme Court is unpersuasive. Nave v. Delo, 62 F.3d at 1030; Sweet v. Delo, 125 F.3d at 1150.
Alternatively, if the Court considered the merits, this claim also would be denied. Petitioner alleges that cross-examination of Ramo and Broderick about their knowledge of petitioner's background "was relevant and necessary because the testimony would have allowed Petitioner's counsel to test the witnesses' memory by determining whether they remembered events about Petitioner's background and family." Amended Pet., p. 63. Petitioner further alleges that the cross-examination "was necessary to uncover biases that the witnesses harbored toward Petitioner." Id. Upon review of the entire proceedings, the Court determines that the trial court's decision to limit the admission of evidence regarding Broderick and Ramo's knowledge of petitioner and his background did not result in a denial of petitioner's due process rights. See generally Tr.Tran. Vol. IV, pp. 125-287 and Vol. V., pp. 70-152. Petitioner has not shown that the lack of this additional testimony from Ramo or Broderick fatally affected the outcome of the trial or the sentencing. For the foregoing reasons, Ground IV.C.3 is denied.

Ground IV.D.: Constitutionally Defective Jury Instructions.
Petitioner asserts that he was denied due process of law because the trial court gave erroneous and misleading jury instructions during the penalty phase of his trial.

Ground IV.D.1.: The Trial Court Erred by Giving An Instruction that Failed to Enumerate Specific Mitigating Circumstances.
Petitioner asserts that the trial court erred by giving Jury Instruction 19 at the penalty phase instead of Instruction I tendered by trial counsel for petitioner. Instruction I, which the trial court refused, read:
INSTRUCTION NO. 1
If you decided that a sufficient aggravating circumstance or circumstances exist to warrant the imposition of death, as submitted in Instruction No. ___, it will then become your duty to determine whether a sufficient mitigating circumstance or circumstances exist which outweigh such aggravating circumstance or circumstances so found to exist. In deciding that question you may consider all of the evidence relating to the murder of James Anthony Michaels, Sr.
You may also consider:
1. Whether the defendant acted under the substantial domination of another person or persons.
2. Whether the capacity of the defendant to appreciate the criminality of his conduct *810 or to conform his conduct to the requirements of law was substantially impaired.
3. The age of the defendant at the time of the offense. You may also consider that the defendant had a mental disease or defect at the time of the murder of James Anthony Michaels, Sr.
You may also consider any circumstances which you find from the evidence in extenuation or mitigation of punishment:
1. That Fred Prater received total immunity from prosecution by both the State and Federal Governments.
2. That Federal and State criminal charges against John Ramo have been dropped and reduced and his sentences have been guaranteed to run concurrently.
3. That Federal and State criminal charges against Ronald Joseph Broderick have been dropped and reduced and his sentences have been guaranteed to run concurrently.
4. That you may now consider any "lingering doubts" you may have concerning defendant's guilt. Lingering doubt is defined as that state of mind between "beyond a reasonable doubt" and "beyond all possible doubt."
5. That James Anthony Michaels, Sr. was the leader of the Syrian faction of organized crime in St. Louis.
6. That the defendant had a minimal amount of formal education.
7. That the defendant lacked normal intellectual capabilities.
8. That defendant had been raised by several relatives throughout life.
9. That the defendant is a member of a family that will deeply mourn his loss.
10. That the defendant has demonstrated the capacity and ability to be a contributing member of prison society.
11. That if sentenced to life imprisonment without the possibility of probation or parole for 50 years, the defendant will be 86 years old when he is first eligible for parole.
If you unanimously decide that a sufficient mitigating circumstance or circumstances exist which outweigh the aggravating circumstances found by you to exist, then you must return a verdict fixing defendant's punishment at imprisonment for life by the Division of Corrections without eligibility for probation or parole until he has served a minimum of fifty years of his sentence.
Resp.Exh. B., pp. 121-23.
The Court gave the following instruction on mitigating circumstances.
INSTRUCTION NO. 19
If you decide that a sufficient aggravating circumstance or circumstances exist to warrant the imposition of death, as submitted in Instruction No. 18, it will then become your duty to determine whether a sufficient mitigating circumstance or circumstance exist which outweigh such aggravating circumstances [sic] or circumstances so found to exist. In deciding that question you may consider all of the evidence relating to the murder of James Anthony Michaels, Sr.
You may also consider:
1. Whether the defendant acted under extreme duress or substantial domination of another person.
2. Whether the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.
3. The age of the defendant at the time of the offense.
You may also consider that the defendant had a mental disease or defect at the time of the murder of James Anthony Michaels, Sr.
You may also consider any circumstances which you find from the evidence in extenuation or mitigation of punishment.
If you unanimously decide that a sufficient mitigating circumstance or circumstances exist which outweigh the aggravating circumstance or circumstances found by you to exist, then you must return a verdict fixing defendant's punishment as imprisonment for life by the Division of Corrections without eligibility for probation or parole *811 until he has served a minimum of fifty years of his sentence.
Id. at 108.
Petitioner alleges that the trial court erred in failing to give his proffered Instruction I which enumerated specific mitigating circumstances and, as a result, the erroneous jury instruction fatally infected his trial and resulted in a sentence that violated due process. In rejecting petitioner's claim, the Missouri Supreme Court relied upon State v. Young, 701 S.W.2d 429 (Mo. banc 1985), wherein the court had previously held that the language similar to that which petitioner proposed was prohibited by Note on Use 5 of MAI-CR2d 15.44.
Upon review of petitioner's proffered instruction and the instruction given to the jury, the Court concludes that there is no constitutional infirmity. The Eighth and Fourteenth Amendments require that the jury not be precluded from considering as a mitigating factor any aspect of the defendant's character, record or any of the circumstances of the crime that the defendant proffers as a basis for a sentence of less than death. Lockett v. Ohio, 438 U.S. 586, 604-05, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). Rather than foreclosing the jury from considering evidence of certain mitigating circumstances, Instruction 19 informed the jury that they "may also consider any circumstances which you find from the evidence in extenuation or mitigation punishment." The instruction was proper. See also Reese v. Delo, 94 F.3d 1177, 1186 (8th Cir.1996). The claim is without merit.

Ground IV.D.2.: The Trial Court Erred by Instructing the Jury that it Must Unanimously Find the Existence of Mitigating Circumstances.
Next, petitioner alleges that the trial court erred in giving jury Instruction 19 because the instruction erroneously informed the jurors that they "must agree unanimously on a given piece of evidence before such evidence could be considered in mitigation." Amended Pet., p. 64. Petitioner alleges that the instruction violates Mills v. Maryland, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988) (finding unconstitutional jury instructions that led the jury to believe that they could only return a verdict of life imprisonment if they unanimously agreed to specific facts they would consider to be mitigating).
Petitioner did not raise this claim in state courts. The Eighth Circuit has held that a claim alleging a violation of Mills which was not raised in the state courts is procedurally barred from federal habeas review absent a showing of cause and prejudice. Guinan v. Armontrout, 909 F.2d 1224, 1231 (8th Cir. 1990); Grubbs v. Delo, 948 F.2d 1459, 1470-71 (8th Cir.1991).
Petitioner asserts that ineffective assistance of his counsel (apparently both trial counsel and appellate counsel) constitutes cause to excuse his prior failure to raise this constitutional claim on appeal. Petitioner also alleges that he was prejudiced by counsel's failure to raise this claim because it is reasonably likely that a state court, presented with this claim, would have ruled differently. Id. at 39-40. As previously stated, a claim of ineffective assistance of trial counsel and/or appellate counsel may be used to establish cause for procedural default only if the claim was first presented to the state court as an independent Sixth Amendment claim. Oxford v. Delo, 59 F.3d at 747; McKinnon v. Lockhart, 921 F.2d at 832. Petitioner did not assert this claim of ineffective assistance of counsel to the state courts. Petitioner's effort to show cause and prejudice for his procedural default fails.
Moreover, if the Court considered the merits of this claim, it would be denied. The Eighth Circuit has reviewed a claim by a habeas petitioner that an identical portion of a substantially similar jury instruction on mitigating circumstances[22] violated Mills v. Maryland and concluded that the instruction did not violate Mills. McDonald v. Bowersox, 101 F.3d at 599-600. The claim is denied.
To the extent that petitioner has asserted a separate claim for ineffective assistance of counsel for failure to object to Instruction 19, the claim is also procedurally barred. Moreover, such a claim is without merit. Instruction *812 19 was not constitutionally infirm, thus, petitioner suffered no prejudice. For all the foregoing reasons, all relief requested on Ground IV.D.2 is denied.

IV.E.: Unconstitutional Misconduct by the Prosecutor

Ground IV.E.1.: Prior to Trial, the Prosecutor Failed to Disclose the Identity of An Eyewitness.
Petitioner alleges that an eyewitness to the explosion of Jimmy Michaels' car was not disclosed by the State although his identity was known to the prosecutor. The witness, Richard Sellmann, subsequently testified in the state court prosecution of Anthony Leisure, petitioner's older cousin, who also was charged in relation to the Jimmy Michaels car bombing. State v. Anthony Leisure, 810 S.W.2d 560 (Mo.App.1991). Petitioner asserts that the prosecution suppressed this evidence, which was both favorable to petitioner and material to the issue of guilt, in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
In the Anthony Leisure trial, Sellmann was called as a defense witness and testified as follows: Sellmann witnessed the explosion of Jimmy Michaels' car on September 17, 1980. Sellmann was approximately four cars behind Michaels' automobile in the right lane preparing to exit highway 55 at the Reavis Barracks exit. At the time of the explosion, all of the vehicles around Sellmann were sedans except off to his left behind him was a pickup truck. Sellmann did not see a van on the highway near the scene of the explosion. Sellmann is a self-proclaimed "van person," meaning that he pays particular attention to trucks and vans driving around him. See Petitioner's Exh. 11, pp. 1-7, Excerpts from Sellmann's testimony at the trial of Anthony Leisure.
Petitioner alleges that the prosecutor had knowledge of Sellmann and his potential exculpatory testimony but never provided this information to petitioner. Petitioner argues that Sellmann's testimony was material to the issue of guilt and would have been strong evidence "which may have exonerated Petitioner, or cast serious doubt upon the prosecution's case." First Amended Pet., pp. 65-66.
Petitioner concedes that he did not raise this claim in the state courts, but asserts cause for his procedural bar in that the basis for the claim was concealed by the State. Additionally, petitioner asserts that at an evidentiary hearing, he would demonstrate that this claim was not reasonably available to him. Petitioner has come forward with no evidence that the basis for this claim was in any way concealed. Moreover, petitioner is only entitled to an evidentiary hearing if he can show cause for his failure to develop facts in state-court proceedings and actual prejudice resulting from the failure, or if he can show that a fundamental miscarriage of justice would result from failure to hold a federal evidentiary hearing. Keeney v. Tamayo-Reyes, 504 U.S. at 12. Petitioner has failed to show that he did not have an opportunity to fully develop this claim in state court. Petitioner has not shown adequate cause, thus, the claim is procedurally barred.
If the Court were to consider the merits of this claim, the claim would fail. Successful establishment of petitioner's claim requires three findings: "(1) the prosecution suppressed evidence; (2) the evidence was favorable to [petitioner]; and (3) the evidence was material to the issue of guilt." Cornell v. Nix, 976 F.2d 376, 382 (8th Cir.1992). "Suppressed exculpatory evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A `reasonable probability' is a probability sufficient to undermine confidence in the outcome." Id. (citing United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (internal citations omitted)).
There is no evidence before the Court that the state suppressed Sellmann's identity. As evidence that the state knew of the existence of Sellmann and the nature of his testimony, Petitioner states that the prosecutor in his case, Assistant Circuit Attorney Edward Rogers, was deputized as a Special Assistant United States Attorney in petitioner's federal *813 RICO trial, which preceded the state trial. Notably, there is no evidence before the Court that Sellmann was a witness at this RICO trial. Petitioner attempts to support his claim that the State knew of Sellmann because Sellmann testified, at the Anthony Leisure Trial, that he had talked to members of federal and state law enforcement. Pet. Exh. 11.
Upon careful review of the record, the Court finds that petitioner's claim that Rogers knew of Sellmann and the nature of his testimony at the time of petitioner's trial is unsubstantiated and lacks any support in the record. The fact that Sellmann testified at the Anthony Leisure trial at best creates an inference that the prosecutor learned of Sellmann's existence at Anthony Leisure's trial in May of 1987.[23] Petitioner's trial began on March 30, 1987.
Additionally, Petitioner has not shown that there is a reasonable probability that had the evidence been disclosed, the result of petitioner's conviction or sentence would have been different. As respondents have argued, the significance of Sellmann's testimony is de minimis in light of the fact that the jury in the Anthony Leisure case, with Sellmann's testimony, also convicted the defendant of capital murder. State v. Anthony Leisure, 810 S.W.2d 560 (Mo.App.1991). For all of the foregoing reasons, the Court will deny all relief requested in Ground IV.E.1.

Ground IV.E.2.: During the Trial, the Prosecutor Committed Numerous Acts of Misconduct.
Petitioner asserts four acts of prosecutorial misconduct which the Court will address seriatim.
First, petitioner alleges that the trial court erred in overruling his objections to the prosecutor's cross-examination of psychologists Daniel Cuneo and Michael Armour. Petitioner alleges that the prosecutor "indulged in persistent and prejudicial argumentative questioning, insulted the witnesses and, by argument alone, discredited these witnesses in the eyes of the jury." Amended Pet. p. 66. In denying this claim on direct appeal, the Missouri Supreme Court stated:
There is little question on this record but that the prosecutor's cross-examination was pointed, rigorous, and finely detailed. Much of the antagonism between Cuneo and the prosecutor which the record portrays is a product of Dr. Cuneo's unwillingness to answer questions without evasion. We have reviewed the transcript with care and find no abuse in the trial court's control of cross-examination of Dr. Cuneo. With regard to Dr. Armour, the record portrays a cross-examination which was again vigorous and often intense. We find no abuse of discretion, however, in the trial court's control of cross-examination.
State v. Leisure, 749 S.W.2d 366, 377 (Mo. banc 1988).
This Court's review is limited to whether the conduct complained upon violated petitioner's federal constitutional rights. Upon careful review of the record of the testimony of Dr. Cuneo and Dr. Armour, the Court concurs with the Missouri Supreme Court and concludes that petitioner's due process rights were not violated by the prosecutor's conduct nor was petitioner denied his right to a fair trial.
Petitioner next alleges that the trial court erred in refusing to grant a mistrial after the prosecutor "threatened the jury" during final arguments. Although petitioner raised this claim in his motion for a new trial and in his motion to recall the mandate, petitioner failed to raise this claim on his direct appeal. Resp.Exh. B., p. 72 at ¶ 19. Petitioner has failed to show cause and prejudice, or a resulting miscarriage of justice. This claim is procedurally barred. Sweet v. Delo, 125 F.3d at 1150.
In an attempt to overcome this procedural bar, petitioner asserts that the Missouri Supreme Court addressed the merits of this claim. Petitioner is incorrect. The Missouri Supreme Court addressed the merits of petitioner's claim that during the closing argument the prosecutor improperly argued unproven *814 facts that petitioner had an antisocial personality and that he had malingered during his examination by psychologists. State v. Leisure, 749 S.W.2d at 378; Resp.Exh. M, p. 64. The present claim of prosecutorial misconduct based on threatening statements to the jury was not properly before the state courts.
Even absent a procedural bar, the Court finds this claim to be without merit. During his closing argument, petitioner's counsel argued for a sentence of second degree murder and discussed "the deals" which the government had made with Prater, Ramo and Broderick in exchange for their testimony. Tr. Tran. Vol. VIII, pp. 167-171. Then, the prosecutor made the following argument:
He talks about, "Well, come back with murder second, because it's fair, folks. You know, the other guys got murder second. Why shouldn't this guy?" Well, what did those guys get? They had their entire  First of all, they deserve everything they got. No question about that. These aren't angels. But they go to jail.
Now, Fred Prater doesn't because Fred Prater's the first one, I mean, there's no case at all without Fred Prater. But he comes in with the initial evidence that tells the police where to go and look for stuff. That's clear.
They come in and what do they get for it? Well, they get to go to prison. Maybe not for as long as a lot of people think is fair for them, but they get to go to prison, and their families get to be absolutely ripped out of their entire lives. Because they're not going to be around St. Louis anymore, and they don't get to be with their loved ones, and there's, I think, whatever it totals up to, twelve, thirteen, fourteen people in Broderick's family somewhere else. Their entire family lives are disrupted. Not just them but their entire family.
And they're convicted of murder in the second degree. It's not a tap on the wrist, folks. It may not be as much as you want, but it's not a tap on the wrist. But what he's asking you to do is what I talked to you about initially when you were selected about will you follow your oath as a juror, because I told you that these deals are in there.
And the first question is, when you decide what the facts of the case are, will you look at it objectively? I said, "Will you decide whether we proved that the man did what we say that he did? And if he did what we say that he did, he's guilty of capital murder."
It's not a question of what happened to the other guys, let's give him the same degree of murder. That's not your duty. That's a violation of your oath. Do you understand that? That what he's asking you is for you to violate the oath that you took when you came into this case. Why should he make you criminals? Well, he does it for the benefit of his client.
Tr.Tran. Vol. VIII, pp. 186-187. Subsequently, petitioner's attorney moved for mistrial stating that the prosecutors's "telling the jury that if they listened to the defense counsel, took his suggestions, that they would be criminals," among other things, was cause for a mistrial. Tr.Tran. Vol. X, p. 185.
To state a claim for relief based upon comments at trial by the prosecutor, petitioner must show that the prosecutor's comments "were so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair." Mack v. Caspari, 92 F.3d 637, 643 (8th Cir.1996) (citing Jones v. Jones, 938 F.2d 838, 844-45 (1991)). "Under this standard, a petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial  i.e., that absent the alleged impropriety, the verdict probably would have been different." Id.
The Court has reviewed the comments in question in the context of the entire trial record and finds that, even if the alleged remarks were improper, any impropriety did not rise to the level of depriving petitioner of a fair trial. This ground is without merit.
Petitioner next alleges that the prosecutor improperly testified during closing argument and in doing so, attempted to change the testimony of his witnesses, Broderick and Ramo. During his closing argument, counsel for petitioner argued:

*815 By the way, if you'll recall that van, both Joe Broderick and John Ramo and Mr. Rogers, for that matter, said that the van doors slid open. You've all seen the picture of the van. This is the van used. Has no sliding doors. Or would have to go out like that and hit Mr. Michaels' car. Details.
Tr.Tran. Vol. VIII, p. 162. The prosecutor responded in his closing argument:
Ramo and Broderick said the van door slid open, and he picked up the exhibit and says, "The van door obviously opens. And you can see the hinges, can't you?" Now, I'm not going to bother finding the instruction. In one of those first couple of instructions, first, second or third, there's an instruction that says you don't assume that what's included in a question by an attorney is an answer. You listen to the answer itself. Okay? Just because an attorney puts a fact in a question doesn't mean that when somebody says "Yes" that that's the answer.
And I submit to you, and you think about it, I have to admit that I keep talking about sliding doors because I'm used to that kind of van, but any time that anything was said about a sliding door, it came out of my mouth, not out of one of those witnesses' mouth. And you think about that. You think about that. But yet he's willing to tell you that the witnesses said that and that they lied.
Tr.Tran. Vol. VIII., pp. 182-183. At trial, petitioner's counsel made no objection to this argument.
This claim is also procedurally defaulted. Petitioner alleges that prosecutorial misconduct is cause to excuse the procedural default and that prejudice has been established in that the prosecutor mischaracterized the evidence to fit the photograph he had introduced into evidence. Trav. pp. 46-47. The photograph depicted a van with hinged doors. Pet.Exh. 12. Petitioner has shown neither cause nor prejudice to excuse his procedural default.
Moreover, if the Court would consider the merits of this claim, it would be denied. Broderick testified as follows on direct examination:
Q. Okay. Did anybody get out of the van then?
A. David did.
Q. And how did he get out of the van?
A. He got out on the side door. The van's got a sliding door. And he got out and went underneath the car, Michaels', and put the bomb on it.
Tr.Tran. Vol. V., p. 97. Ramo testified as follows on direct examination:
A. He backed in right next to it.
Q. Backed in right next to it?
A. Right next to it.
Q. So there would be a sliding door right here on the van, correct?
A. Yes.
Q. And that made it possible for David to get out and put the van under the driver's side of the car, right?
A. The bomb, yes.
Q. Excuse me. The bomb. And that's what happened, right?
A. Yes, sir.
Tr.Tran. Vol IV, p. 265.
Although the prosecutor misstated the testimony of Ramo and Broderick regarding the van door, this misstatement was not so egregious that it fatally infected the proceedings. Every improper or erroneous statement by a prosecutor does not necessarily present a constitutional violation. Donnelly v. DeChristoforo, 416 U.S. 637, 647, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). The relevant inquiry on habeas review is whether the comments so infected the trial with unfairness as to make the conviction and/or sentencing a denial of due process. Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).
Having reviewed the comments in question in the context of the entire trial record, the Court finds that the argument did not rise to the level of depriving petitioner of a fair trial. The prosecutor's argument was responsive to the arguments of petitioner's trial counsel. Moreover, the evidence against petitioner was overwhelming and if the prosecutor's remarks were improper, they did not have a substantial and injurious effect or influence *816 in determining the jury's verdict. Additionally, the trial court properly instructed the jury to consider only the evidence and that the statements and arguments of counsel are not evidence. Resp.Exh. B, Jury Instruction 5. Finally, petitioner has "made no showing that absent the alleged impropriety, the verdict probably would have been different." Mack v. Caspari, 92 F.3d at 642.
Petitioner further argues that this alleged error was compounded by the unavailability of Sellmann, see discussion supra. For the reasons discussed above regarding petitioner's claim relating to witness Sellmann, this claim is without merit. Moreover, cumulative error is not grounds for habeas relief because "each habeas claim must stand or fall on its own." Girtman v. Lockhart, 942 F.2d at 475. The claim will be denied.
As his final argument based upon prosecutorial misconduct during trial, petitioner asserts that during his closing argument the prosecutor told the jury that they must return a death sentence if the jury found one aggravating circumstance. Petitioner argues that this was a material and prejudicial misstatement of the law concerning the jury's ability to consider both aggravating and mitigating circumstances.
In support of this argument, petitioner attaches an affidavit from Father John Edward Vogler. Father Vogler is a Roman Catholic Priest who testified as a witness on behalf of petitioner during the penalty phase of his trial. In his affidavit, Father Vogler states that juror Donna Denando told him, over five months after the trial, that she believed that the death penalty was mandatory after the finding of one aggravating circumstance. Pet.Exh. 13. As a preliminary matter, because petitioner has not shown cause and prejudice for failure to present this factual information in state court, Father Vogler's affidavit is not admissible in this habeas proceeding. Keeney v. Tamayo-Reyes, 504 U.S. at 8-9. Moreover, testimony by juror Denardo about her misunderstanding of an instruction is inadmissible pursuant to Fed.R.Evid. 606(b).
Petitioner did not raise this claim in state court and has failed to show cause and prejudice for his failure. The claim is procedurally barred. In any event, the claim is without merit. In his closing argument, the prosecutor stated as follows:
Now those are the four aggravating circumstances that apply to this case, statutory aggravating circumstances. You have to decide whether I have proved to you that these things exist, any one of them. If I've proved any one of those things to you, at that point you're authorized by law to consider the death penalty.
Tr. Tran. Vol. X p. 155. As discussed more fully below, the trial court properly instructed the jury on aggravating and mitigating circumstances. The prosecutor's comment was not erroneous. This claim is without merit.

Ground IV.E.3.: After Trial, the Prosecutor Committed Misconduct Relating to the Jurors.
Petitioner's allegation of post-trial prosecutorial misconduct is that the prosecutor discouraged juror Denando from signing an affidavit that she knew Father Vogler. During the penalty phase of the trial, Father John Vogler testified on petitioner's behalf. The trial ended on April 9, 1987. Subsequently, in September of 1987, Father Vogler encountered Ms. Denando at a religious service and spoke with her about the trial. Vogler has stated, via affidavit, that Ms. Denando told him that the prosecutor had "urged or instructed her not to sign the affidavit" that she had known Father Vogler. Pet. Exh. 13. As previously stated, absent a showing of cause and prejudice for failure to develop the facts in state court, Father Vogler's affidavit is not admissible in this habeas proceeding. Keeney v. Tamayo-Reyes, 504 U.S. at 8-9.
In addition, petitioner's claim is procedurally barred because it was not presented in the state courts. Petitioner has not shown cause and prejudice or a resulting miscarriage of justice. Moreover, these allegations, even if true, do not warrant habeas relief. Petitioner cannot show that, based upon this alleged conduct which occurred after the trial, that his trial or sentencing were fundamentally *817 unfair. The claim is wholly without merit and will be denied.

Ground IV.F.: Petitioner was Denied Due Process and Equal Protection Because he Was Not Allowed to Confront and Cross-Examine Witnesses Against Him in the Hearing on the State Postconviction Motion.
Petitioner alleges that he was denied his constitutional rights to due process and equal protection in that he was not allowed to be present in the courtroom at the evidentiary hearing on his state postconviction motion. Pursuant to Missouri Rule of Court 29.15(h), petitioner's testimony at the hearing was given by deposition. In denying petitioner's claim of error on direct appeal, the Missouri Supreme Court, citing Rule 29.15(h), found that under Missouri law, the postconviction proceeding was civil and that the confrontation clause does not apply to a post-conviction relief hearing. Leisure v. State, 828 S.W.2d at 878. The Court concurs with the finding of the Missouri Supreme Court.
Petitioner relies upon U.S. v. Streeter, 907 F.2d 781, 792 (8th Cir.1990), to support his claim that the Confrontation Clause of the Sixth Amendment applies to the evidentiary hearing in question. In U.S. v. Streeter, the Eighth Circuit stated that the Confrontation Clause of the Sixth Amendment applies at an evidentiary hearing regarding disputed facts in a presentence report. This holding in Streeter has been overruled, see U.S. v. Wise, 976 F.2d 393, 400-01 (8th Cir.1992), thus, Streeter does not support petitioner's claim that he was denied his constitutional right of due process and right to confront witnesses. The Confrontation Clause of the Constitution explicitly applies to criminal proceedings. U.S. Const. amend. VI. The claim is denied.

E. Ground V: The Conviction and Death Sentence Imposed Upon Petitioner Violated His Rights Under the Fifth and Fourteenth Amendments Because the State of Missouri Failed to Comply with the Requirements of the Interstate Agreement on Detainers.
Petitioner asserts that the state violated Article II and Article IV of the Interstate Agreement on Detainers ("IAD"), thereby depriving petitioner of his constitutional right to due process of law. The IAD, 18 U.S.C.App. 2, § 2, enacted by Missouri at R.S.Mo. § 217.490:
is a compact among 48 States, the District of Columbia, and the Federal Government. It enables a participating State to gain custody of a prisoner incarcerated in another jurisdiction, in order to try him on criminal charges. Article IV(c) of the IAD provides that trial of a transferred prisoner "shall be commenced within one hundred and twenty days of the arrival of the prisoner in the receiving State, but for good cause shown in open court, ... the court having jurisdiction of the matter may grant any necessary or reasonable continuance." IAD Article V(c) states that when trial does not occur within the time prescribed, the charges shall be dismissed with prejudice.
Reed v. Farley, 512 U.S. 339, 341-42, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994). In his postconviction motion, petitioner alleged that the trial court lost jurisdiction over his case for failure to commence trial within 120 days as required by the IAD and that his trial counsel was ineffective for failure to raise this issue. In affirming the denial of petitioner's claim, the Missouri Supreme Court stated:
The motion court denied this point finding that Leisure had failed to present evidence in support of his claim.
Zvibleman testified that no detainer had been filed for Leisure. Leisure presented no evidence that a detainer existed. Zvibleman testified at the motion hearing that he did extensive research on the detainer issue and talked to several attorneys regarding a possible basis to dismiss. Zvibleman found no viable theory for obtaining dismissal since no detainer was ever filed.
Leisure argues a writ of habeas corpus ad prosequendum was issued to secure his attendance at the state trial, and constitutes sufficient evidence of his claim. Leisure filed a supplemental legal file with this Court containing the writ, which Leisure states was before the motion judge.

*818 The existence of the writ of habeas corpus ad prosequendum does not affect the motion court's denial of this point. Where a federal prisoner's appearance in state court is obtained via a writ of habeas corpus ad prosequendum, the Agreement on Detainers is not applicable. State v. Leisure, 810 S.W.2d 560, 576 (Mo.App.1991). Trial counsel cannot be found ineffective for not filing a motion to dismiss that is rejected by Missouri case law. Failure to make a motion of extremely doubtful validity provides no basis for a claim of ineffective assistance of counsel unless there has been a genuine deprivation of a right to a fair trial. Daniels v. State, 751 S.W.2d 399, 402 (Mo.App.1988).
Leisure v. State, 828 S.W.2d at 877.
The Supreme Court has resolved the issue of when a petitioner's claim of a state's failure to observe the IAD may be cognizable in a habeas proceeding. In Reed v. Farley, the Supreme Court stated:
[w]e hold that a state court's failure to observe the 120-day rule of IAD Article IV(c) is not cognizable under § 2254 when the defendant registered no objection to the trial date at the time it was set, and suffered no prejudice attributable to the delayed commencement.
***
When a defendant obscures Article IV(c)'s time prescription and avoids clear objection until the clock has run, cause for collateral review scarcely exists.
Id. 512 U.S. at 342, 349. In rejecting the petitioner's argument that the failure to comply with the IAD's speedy trial provisions constituted a violation of his constitutional right to a speedy trial under the Sixth Amendment, the Supreme Court stated that "[a] showing of prejudice is required to establish a violation of the Sixth Amendment Speedy Trial Clause." Id. at 353. As in Reed v. Farley, the "necessary ingredient is entirely missing here." Id. at 353.
Even assuming, arguendo, that Missouri violated the IAD, an issue which the Court need not reach, petitioner's statutory claim is not cognizable under § 2254. Although Reed v. Farley established that the IAD is to be considered federal law for the purposes of habeas corpus, nonconstitutional claims can be raised in a § 2254 proceeding only if the alleged error qualifies as "a fundamental defect which inherently results in a complete miscarriage of justice." Id. at 348; see also Cross v. Cunningham, 87 F.3d 586, 588 (1st Cir.1996) (denying the petitioner's allegation of an IAD violation because the petitioner's allegations had nothing to do with securing a fair trial and the petitioner made no claim that the alleged IAD violation actually impaired his ability to prepare a defense or to prosecute his appeal). Petitioner has failed to show that he objected to his trial date or that he suffered any prejudice for the alleged delay. The claim is denied.

F. Ground VI: The Conviction and Death Sentence Imposed Upon Petitioner Violated his Rights Under the Sixth Amendment Because Petitioner Received Ineffective Assistance of Counsel.

Ground VI.A.: Violation of Professional Responsibilities.

Ground VI.A.1.: Failure to Strike Jurors
Petitioner alleges that his trial counsel rendered ineffective assistance because he:
(a) failed to substantiate a motion to strike Zewiski, a woman who held fixed opinions regarding the case; (b) failed to make any effort to obtain relief or even timely advise the trial court when counsel received information that juror Jack Warner was involved in a relationship with petitioner's girlfriend, Melinda Corbin, who was the mother of petitioner's daughter; and (c) failed to strike John Fuller, a co-worker and possible friend of Jimmy Michaels' grandson, John Charles Michaels, who, himself was a victim of The Edge shooting.
Amended Pet. p. 75.

a. Venireperson Zewiski
Petitioner alleges that his trial counsel was ineffective for failing to provide any argument why venireperson Zewiski should have been stricken for cause. In denying this claim in petitioner's postconviction proceedings, both the motion court and the Missouri *819 Supreme Court relied upon the state procedural bar that a claim litigated on direct appeal cannot be relitigated in a post-conviction proceeding. Resp.Exh. K(1), pp. 166-67; Leisure v. State, 828 S.W.2d at 874.
The Court's review of the record reveals that petitioner's counsel moved to have venireperson Zewiski struck for cause. Petitioner's claim that counsel should have done more does not demonstrate ineffective assistance. Strickland v. Washington, 466 U.S. at 687. Moreover, because Zewiski was not ultimately selected as a member of the petit jury, petitioner can show no resulting prejudice from the alleged ineffective assistance. See supra Ground IV.B.1. The claim is denied.

b. Juror J. Warner
Petitioner alleges that his trial counsel was ineffective when Jack Warner's identity was brought to his attention in that his counsel failed in his duty to discuss the matter with petitioner and investigate the matter. Petitioner raised this issue in state court and the Court has previously set forth the relevant portion of the Missouri Supreme Court's decision denying his claim, supra Ground IV. A.3.
The conclusion of the state court that trial counsel rendered effective assistance is not a finding of fact binding on this Court to the extent stated by 28 U.S.C. § 2254(d). "However, the findings made by the state court in deciding the claim are subject to the deference required by that statute." Nave v. Delo, 62 F.3d 1024, 1037 (8th Cir.1995) citing Strickland v. Washington, 466 U.S. at 687; see also Sloan v. Delo, 54 F.3d at 1382 (ineffective assistance claims are mixed questions of law and fact; legal conclusions are reviewed de novo and state court findings of fact are presumed to be correct under 28 U.S.C. § 2254(d)). See Resp.Exh. K(1), pp. 19-21 (Mem. Opinion and Order of the Circuit Court).
To prevail on his claim of ineffective assistance, "petitioner must establish that his counsel's performance was deficient and that he was prejudiced by that deficient performance." Strickland v. Washington, 466 U.S. at 698. To show prejudice, petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Because the Court has previously found that the presence of juror Warner did not result in prejudice to petitioner, the present claim fails.

c. Juror J. Fuller
Petitioner alleges that he was denied the opportunity to have Fuller struck from the jury in that his trial counsel refused to discuss this matter with him. Petitioner also alleges that Fuller's manifest partiality rendered the trial fundamentally unfair.
Petitioner raised this claim in state court as part of his claim that he was denied his right to be present at the trial when the peremptory challenges were made. In affirming the denial of this claim, the Missouri Supreme Court stated that the record supported the trial court's finding that Fuller was not biased. Leisure v. State, 828 S.W.2d at 877. The state court's findings are supported by the record. Tr. Tran. Vol. IV, p. 3. Moreover, the Court previously has found that juror Fuller was impartial, thus, petitioner has failed to demonstrate how his counsel's alleged ineffectiveness caused him prejudice. The claim is denied.

Ground VI. A.2.: Failure to Consult with Petitioner During Trial.
In his next three-fold claim, petitioner alleges that his trial counsel failed to render effective assistance by "refusing to consult" with him at significant points during the trial. In state court, petitioner did not raise a separate claim of "failure or refusal to consult," thus, this claim is procedurally barred. Alternatively, each of petitioner's specific claims of failure to consult is without merit.
First, petitioner claims that counsel refused to discuss the venirepanel with petitioner at critical times, and petitioner had information regarding bias and prejudice of several of the venirepersons. The Court has addressed each of petitioner's claims of bias regarding specific venirepersons and has found each to be without merit. Thus, petitioner has failed to demonstrate how he was *820 prejudiced by his counsel's alleged failure to consult with him about the venirepanel.
Next, petitioner alleges that because his trial counsel refused to discuss matters with petitioner throughout the guilt phase of the trial, petitioner was deprived of his opportunity to present a defense and deprived of his opportunity to testify in his own behalf. Again, the Court has previously rejected petitioner's claim that he was denied his right to testify on his own behalf. Thus, petitioner has failed to show how he was prejudiced by his counsel's alleged failure.
Finally, petitioner alleges that if trial counsel had consulted him, counsel would have known that petitioner had a copy of the original Frederico Lowe-Bey letter which petitioner had copied and sent to the Court. During the trial, on cross-examination of Dr. Armour, the prosecutor introduced two letters petitioner had sent to the trial court which contained the words "pressure" and "institution" which were spelled correctly. The prosecutor introduced these letters to support his claim that petitioner intentionally misspelled the words "pressure" and "institution" when he took Dr. Armour's test regarding reading and verbal skills. Tr. Tran. Vol. VIII, pp. 43-44. In his Rule 29.15 motion, petitioner argued that he had the original letter written by another inmate, Fredrico Lowe-Bey, which petitioner had copied and that his attorney was ineffective for failing to call Fredrico Lowe-Bey as a witness. In affirming the denial of his claim, the Missouri Supreme Court stated:
During the trial, the prosecution introduced certain letters from Leisure to demonstrate his mental capacity. Leisure argues that Zvibleman was ineffective for failing to call Fredrico Lowe Bey who had composed the letters, which Leisure merely copied.
Zvibleman testified at the evidentiary hearing that he believed Dr. Armour's testimony effectively established that Leisure had copied the letters. The selection of witnesses and the introduction of evidence are questions of trial strategy, and the choice of trial strategy is not a foundation for finding ineffective assistance of counsel. Harry v. State, 800 S.W.2d 111, 115 (Mo. App.1990). Zvibleman cannot be said to be ineffective for failing to call Lowe Bey since Dr. Armour effectively addressed the issue.
Leisure v. State, 828 S.W.2d at 876. The Court has reviewed the relevant testimony from the hearing on petitioner's Rule 29.15 motion, including petitioner's deposition, as well as the findings made by the circuit court. Pet.Exh. 6, pp. 107-08; Resp.Exh. J., Vol. 1, pp. 310-312; Resp.Exh. K(1), pp. 32-33. At trial, Dr. Armour testified that it appeared that petitioner merely copied the letters which he had sent to the court. Tr. Tran. Vol. VIII, pp. 81-97. The finding of the state court is amply supported by the record. Petitioner has not shown that in failing to consult petitioner regarding the Fredrico Lowe-Bey letter that counsel's performance was deficient and the counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. at 686. All relief requested in Ground VI.A.2 will be denied.

Ground VI.B.: Failure to Investigate and Present Available Defenses.
Petitioner alleges that trial counsel "ignored clear evidence that cast doubt on petitioner's guilt" and that the "lack of this evidence draws into question the reliability of the verdict and the sentence rendering them constitutionally deficient." Amended Pet. p. 78.

Ground VI.B.1.: Failure to Investigate the Confession of Kenneth Loewe.
Petitioner alleges that his counsel was ineffective because he failed to use exculpatory evidence, available to him before trial, regarding Kenneth Loewe. Kenneth Loewe confessed to the FBI that he was involved in the Jimmy Michaels bombing and that he had personally placed the bomb on Jimmy Michaels' car. Kenneth Loewe's statement directly contradicts the prosecutor's evidence that petitioner placed the bomb underneath Jimmy Michaels' car.[24] Petitioner alleges *821 that his trial counsel's failure to investigate Kenneth Loewe deprived petitioner of an opportunity to present evidence inconsistent with the state's theory of the case.
In affirming the denial of this claim, the Missouri Supreme Court stated:
Leisure claims that Kenneth Loewe confessed to California F.B.I. agents that he and John Ramo detonated the bomb that killed Michaels. Zvibleman testified that he reviewed Loewe's statement and found it confusing and inconsistent. Both he and Basset were of the opinion that the statement was incredible. Further, Zvibleman was satisfied with the state's theory that Frank Prader [sic] built the bomb. Zvibleman reasoned that the jury would find it repugnant that the person who built the bomb (Prader) [sic] was granted total immunity, and that feeling would benefit his client at trial. Zvibleman's decision not to use Loewe as a witness was based on a reasonable determination that it would not be beneficial to the defense's case.
*** Although Loewe attended the evidentiary hearing, he refused to answer any questions, asserting his fifth amendment right against self-incrimination.
Leisure v. State, 828 S.W.2d at 877-78.
The findings of the state court are amply supported by the record. Gerald Bassett testified that Kenneth Loewe's confession was "incredulous" and was simply somebody "confessing to a crime just to get publicity." Resp.Exh. J, Vol. I, p. 177. Zvibleman testified that he talked to Loewe's cousin, to Anthony Leisure and to petitioner about Loewe's confession. Zvibleman concluded not to pursue Loewe because Loewe "was nuts" and because the purported confession was too confusing and not believable. Resp. Exh. J. Vol. I, pp. 305-07. The record supports the conclusion of the Missouri Supreme Court that petitioner's trial counsel made a strategic choice after a thorough investigation. His decision was reasonable. The claim is denied.

Ground VI.B.2.: Failure to Investigate Eyewitnesses.
Petitioner alleges that his counsel was ineffective for failing to investigate eyewitnesses to the Michaels' car bombing. Petitioner alleges that if his counsel had investigated, he would have discovered that eyewitness Richard Sellmann would have testified that no van was present at the scene when the car bomb exploded killing Jimmy Michaels. Petitioner argues that if Sellmann had testified at his trial, the outcome would have been different because Sellmann testified at Anthony Leisure's trial and Anthony Leisure received only a life sentence.
Petitioner failed to raise this claim in the state court, thus, the claim is procedurally defaulted. Citing Murray v. Carrier, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), petitioner argues in summary fashion that his default should be excused. Trav. p. 54. Petitioner has failed to overcome the procedural bar with a showing of cause and prejudice or a resulting miscarriage of justice. This claim is procedurally barred.
Even if the Court were to consider this claim, it is without merit. In light of the totality of the evidence in this case, it is unlikely that the eyewitness testimony of Sellmann would have changed the outcome of the trial. The claim is denied.

Ground VI.B.3.: Failure to Investigate Involvement of Robert Allen and Stanley Kowalski.
Petitioner alleges that his trial counsel was ineffective for failing to investigate the involvement of Stanley Kowalski and Robert Allen.[25] In support of his claim, petitioner *822 relies upon testimony from the hearing on petitioner's Rule 29.15 motion wherein postconviction counsel questioned Zvibleman about affidavits that were used in the federal case pertaining to wire taps placed on the business at LN & P Towing and Paul Leisure's residence. According to the record, the affidavits, which are not before the Court, generally attest that Kowalski stated that he had been paid by Paul Leisure to make and place a bomb on Jimmy Michaels car. Resp.Exh. J, Vol. II, pp. 396-97. Petitioner alleges that if his attorney had called Kowalski as a witness, Kowalski would have either testified or invoked his Fifth Amendment right, "negating the material elements of the prosecution's case." Petitioner further alleges that Robert Allen admitted making a portion of the bombing device and that his testimony would also have negated an element of the prosecutor's case.
Petitioner raised both of these claims in state court and both were denied. The Missouri Supreme Court stated:
Leisure also claims that Robert Allan [sic] confessed to an informant that he made the bomb that killed Michaels. Prior to the trial, Bassett interviewed Robert Allan [sic] and found him unwilling to cooperate. At the evidentiary hearing, Allan [sic] denied saying he made the bomb that killed the victim. Again trial counsel's decision not to call this witness fell within the ambit of reasonable trial strategy. ***
Finally Leisure claims he showed Zvibleman an FBI affidavit stating that Stanley Kowalski was paid $10,000.00 to make the bomb and place it on Michael's [sic] car. Leisure claims his counsel was ineffective for failure to investigate Stanley Kowalski. Kowalski did not testify at Leisure's evidentiary hearing.
There is no evidence that Kowalski could have been located or that he would have testified. Leisure needed to show that Kowalski would have testified if called, and that his testimony would provide a viable defense. Franklin v. State, 655 S.W.2d 561 (Mo.App.1983). Leisure failed to sustain his burden of proof on these issues.
Leisure v. State, 828 S.W.2d at 878. The conclusions of the Missouri Supreme Court are supported by the record and shared by this Court. Resp.Exh. J, Vol. I, pp. 129; 307-08. Again, trial counsel's decision not to call these witnesses fell within the ambit of reasonable trial strategy. Strickland v. Washington, 466 U.S. at 686. Petitioner's claims of ineffective assistance of counsel are without merit and all relief requested in Ground VI.B.3 will be denied.

Ground VI.B.4.: Failure to Present Physical Evidence.
Petitioner alleges that his trial counsel was ineffective for failing to offer physical evidence that the clearance between the ground and Jimmy Michaels' car was eleven inches and that petitioner's measurements in all directions exceeded eleven inches. Petitioner alleges that this evidence would have demonstrated that it would have been impossible for petitioner to slide under the car from the passenger side and place the bomb on the driver's side, as alleged by the state's witnesses. Petitioner failed to raise this claim in state courts. As cause for his failure, petitioner alleges that his post-conviction counsel was ineffective. Because petitioner is not constitutionally entitled to post-conviction counsel, petitioner has not shown sufficient cause to overcome the procedural bar. Sweet v. Delo, 125 F.3d at 1151. The claim is denied.

Ground VI.B.5.: Failure to Rebut Unfavorable Inferences.
Petitioner alleges that his trial counsel failed in his duty to object to or rebut the inference at trial that certain letters had been written by petitioner and thereby demonstrated petitioner's level of intelligence. Petitioner alleges that this error was compounded by counsel's failure to call Frederico Lowe-Bey as a witness  the person who actually drafted the letters. Petitioner alleges that as a result of this error, the jury was left with the impression that petitioner was *823 simply "malingering" when he was examined by Dr. Cuneo and Dr. Armour and that he did not actually have a diminished mental capacity as alleged.
The Court has previously denied petitioner's claim that his counsel was ineffective in not calling Lowe-Bey as a witness and in that claim, the Court addressed each of the allegations raised herein. The claim is denied.

Ground VI.B.6.: Failure to Rebut State's Evidence.
Petitioner alleges that his trial counsel was ineffective for failing to rebut testimony from witness L.T. Brown, the jail superintendent. During the penalty phase of petitioner's trial, Capt. Gleiforst testified that petitioner had been an ideal prisoner while incarcerated at the city jail. On cross-examination, the prosecutor asked Gleiforst if he had been suspended two days for allowing petitioner to receive an unauthorized visitor. Gleiforst denied the suspension. The prosecutor called Gleiforst's supervisor, L.T. Brown, who testified that Gleiforst was suspended for allowing Leisure the favor of an unauthorized visitor. Petitioner alleges that the "unrebutted testimony of Brown, combined with the introduction of a letter that the prosecutor asserted Petitioner had written, called into question the evidence of Petitioner's diminished capacity by causing the jury to believe that Petitioner was capable of and was manipulating people." Amended Pet., p. 82.
In affirming denial of the claim, the Missouri Supreme Court discussed the claim in some detail and stated:
Leisure claims that Zvibleman should have called Brown's supervisor, George Kinsey, to rebut Brown's testimony. An affidavit prepared by Kinsey indicated that he had complete authority over disciplinary actions and that Gleiforst had not been suspended for two days.
L.T. Brown was the last person to testify during the penalty phase of Leisure's trial, and there was no endorsement of Brown. Zvibleman testified that he did not even know of Kinsey's existence until the trial was over.
Leisure v. State, 828 S.W.2d at 875. In finding that petitioner has not shown any prejudice from the alleged ineffective assistance, the Missouri Supreme Court went on to state:
Gleiforst's testimony was adduced during the penalty phase of the trial after the jury had found Leisure guilty of a heinous crime. Gleiforst's testimony was presented to show that Leisure had been an ideal prisoner during the time of his incarceration in the city jail. L.T. Brown's testimony was presented to show Gleiforst's possible bias in favor of Leisure. It does not appear that impeaching Brown's testimony would have changed the sentence in this case. The point is denied.
Id. at 876.
The conclusions of the Missouri Supreme Court are supported by the record. At the hearing on petitioner's Rule 29.15 motion, Zvibleman testified that he believed the trial court improperly allowed the prosecutor to call Brown as a witness about a collateral matter. Zvibleman did not know that Brown might be called as a witness, nor did he learn about Kinsey until after the trial. Resp.Exh. J, Vol. I, pp. 308-310. Trial counsel's conduct was reasonable and petitioner has failed to overcome the strong presumption that the conduct falls within the wide range of professionally reasonable assistance. Moreover, petitioner has failed to establish prejudice  a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. at 694. Petitioner's claim of ineffective assistance of counsel is without merit and claim for relief asserted herein will be denied.

Ground VI.C.: Failure to Object to Misstatements of Law and Misconduct of Prosecutor.

Ground VI.C.1.: Failure to Object to Missouri Death Statute.
Petitioner alleges that his trial counsel was ineffective in failing to make timely objection to petitioner being tried and sentenced to death under the applicable Missouri statute. R.S.Mo. §§ 565.030, et seq. Petitioner alleges *824 that the Missouri statute is unconstitutional because: (1) it allows the prosecutor "unbridled discretion in determining whether a criminal defendant will or will not be `death eligible';" and (2) it is unconstitutionally vague because it lists as an aggravating factor whether the murder "was outrageously or wantonly vile, horrible or inhuman, in that it involved torture, or depravity of mind" and those terms are not defined, thus a jury could "conclude that the aggravating circumstance applies to every defendant." Amended Pet. pp. 82-83.
Petitioner raised this claim in his motion to recall the mandate, but failed to raise this claim in his Rule 29.15 motion. Thus, the claim is procedurally barred. Sweet v. Delo, 125 F.3d at 1150. Even if the court were to address the claim, it is without merit. The Missouri Supreme Court has recently "reaffirmed the long line of cases holding the death penalty scheme under Missouri law constitutional." State v. Carter, 955 S.W.2d 548 (Mo. banc 1997) (citing State v. Simmons, 944 S.W.2d 165, 190-91 (Mo. banc 1997); State v. Wacaser, 794 S.W.2d 190, 196 (Mo. banc 1990); State v. McMillin, 783 S.W.2d 82, 103 (Mo. banc 1990)). See also Kilgore v. Bowersox, 124 F.3d at 991 (rejecting the argument that the aggravating circumstance instruction at issue is vague). Counsel cannot be ineffective for failing to raise a meritless objection. Schumacher v. Hopkins, 83 F.3d 1034, 1039 (8th Cir.1996). The claim is denied.

Ground VI.C.2.: Failure to Object to Prosecutorial Misconduct.
Petitioner alleges that his trial counsel was ineffective for failing to object to prosecutorial misconduct during the trial. Petitioner asserts that the details of the alleged prosecutorial misconduct are raised in Ground IV.E. As previously discussed, any alleged acts of prosecutorial misconduct did not deny petitioner a fair trial.
Moreover, at the hearing on petitioner's Rule 29.15 motion, when questioned about his lack of objection to the prosecutor's "abrasiveness" with petitioner's witnesses, Zvibleman testified that he had seen Mr. Rogers, the prosecutor, in trial before and knew of his "tendency to be abrasive." Resp.Exh. J, Vol. 1, p. 312. Zvibleman made a "very deliberate decision" not to raise numerous objections and to hope that the jury would find the prosecutor "repugnant." Id. Certainly, counsel made a strategic decision. Petitioner has neither shown that counsel's performance was constitutionally deficient nor that the deficiency prejudiced the outcome of the proceeding. Schumacher v. Hopkins, 83 F.3d at 1037. The claim is denied.

Ground VI.D.: Failure to Object to Unconstitutional Procedures.

Ground VI.D.1.: Failure to Raise Detainer Defense.
Petitioner alleges that his trial counsel was ineffective for failing to raise the issue that the trial court lacked jurisdiction based upon the time limitations mandated by the IAD. Petitioner alleges that this failure caused defendant prejudice. The motion court rejected this claim. Resp.Exh. K(1), p. 173. This Court has previously set forth the relevant portion of the Missouri Supreme Court's opinion in affirming, supra Ground V. At the hearing on petitioner's Rule 29.15 motion, Zvibleman testified that he researched the issue in question and could find no basis in fact for raising the jurisdictional defect based on detainer law. Resp.Exh. J ., Vol. II, pp. 432-435. Again, petitioner has not demonstrated that counsel's performance was constitutionally deficient nor that the deficiency prejudiced the outcome of the proceeding. Schumacher v. Hopkins, 83 F.3d at 1037. The claim is denied.

Ground VI.D.2.: Failure to File Timely Motion for Change of Venue.
Petitioner alleges that his counsel was ineffective for failing to file a motion for a change of venue in a timely manner. See Mo.R.Crim.P. 32.04. As discussed above, see supra Ground IV.A., the Missouri Supreme Court addressed the merits of petitioner's claim that the pretrial publicity so infected the community and the venirepanel that he was denied his constitutional right to a fair trial. The Missouri Supreme Court declined to reach petitioner's postconviction claim of ineffective assistance of counsel for failure to *825 file a motion for change of venue in a timely manner stating that issued was decided upon direct appeal and could not be relitigated on a theory of ineffective assistance of counsel in a postconviction proceeding. Leisure v. State, 828 S.W.2d at 874.
As previously discussed, petitioner has failed to show any prejudice resulting from the pretrial publicity. Because petitioner has failed to show any resulting prejudice, "i.e. that counsel's conduct rendered the result of the proceeding unreliable," the claim is denied. Schumacher v. Hopkins, 83 F.3d at 1037. The Court will deny all relief requested in Ground VI.D.2.

Ground VI.E.: Fundamentally Defective Counsel.

Ground VI.E.1.: Failure to Allow Testimony at Penalty Phase.
Petitioner alleges that his trial counsel failed to provide effective representation when he failed to allow petitioner to testify at the penalty phase without a knowing and intelligent waiver. Petitioner asserts that he would have testified about his "ill health, speech limitations, probable learning disability, limited schooling, the effect of his mother's death, as well as the deaths of his aunt/substitute caretaker, brother and father, his actual family loyalties and personal values." Amended Pet., p. 85. Petitioner asserts that all of these matters would have weighed against a sentence of death.[26]
Petitioner failed to raise this claim of ineffective assistance of counsel in the state courts. As cause of his failure, petitioner alleges ineffective assistance of postconviction counsel. Because petitioner is not constitutionally entitled to counsel in his postconviction proceeding, his effort to demonstrate cause for his procedural default fails. Sweet v. Delo, 125 F.3d at 1151. Moreover, petitioner has not shown prejudice. The claim is procedurally defaulted. Alternatively, petitioner has failed to show that counsel's strategic decision was not reasonable. Finally, petitioner has not demonstrated that counsel's conduct prejudiced the outcome of the sentencing. The claim is denied.

Ground VI.E.2.: Failure to Present Mitigating Evidence.
Petitioner asserts that despite having information about the prosecutor's view of culpability, trial counsel failed to use it as mitigating evidence at the penalty phase. During the federal trial, the joint position of the prosecutors was that petitioner was a third level of culpability, less culpable than his codefendant cousins. Petitioner argues that his attorney should "have used the prosecutor's own evidence to show his client's lesser culpability and the prosecutor's lack of credibility." Amended Pet., p. 86.
Petitioner failed to raise this claim in state court, but asserts that the cause for his failure was ineffective assistance of postconviction counsel. Petitioner has failed to show cause, Sweet v. Delo, 125 F.3d at 1151, or resulting prejudice. The claim is procedurally barred. Alternatively, the claim is without merit. Petitioner has not demonstrated that counsel's conduct prejudiced the outcome of the sentencing. The claim is denied.

Ground VI.F.: Ineffectiveness of Appellate Counsel.

Ground VI.F.1.: Failure to Raise and Refusing to Instruct on Lesser Included Offense.
Petitioner asserts that his appellate counsel was ineffective for failing to raise the trial court's error in "failing and refusing fully and correctly to instruct the jury on all lesser included offenses." Amended Pet., p. 86 as amended by interlineation. Petitioner alleges that his appellate counsel's failure to raise the issue of the trial court's failure to instruct on felony murder denied him of his rights to equal protection and due process. Petitioner raised this claim of ineffective assistance of appellate counsel in his motion to recall the mandate, which the state court summarily denied. Thus, the issue is not procedurally barred. Nave v. Delo, 62 F.3d at 1030 (claim of ineffective assistance of appellate counsel is not procedurally barred when raised in a motion to recall the mandate).
*826 At petitioner's trial, the jury was instructed on capital murder, murder second and manslaughter. Tr. Tran. Vol. VIII, p. 127, 130; Resp.Exh. B, pp. 95-97 (jury instructions 5 through 9). Petitioner did not request nor did the trial court give an instruction to the jury on felony murder.
Petitioner properly asserts that "[i]n a capital case, due process requires a trial court to instruct the jury on all lesser included offenses supported by the evidence." Williams v. Armontrout, 912 F.2d 924, 928 (8th Cir.1990) (citing Hopper v. Evans, 456 U.S. 605, 611, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982); Beck v. Alabama, 447 U.S. 625, 637-38, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980)) ("While we have never held that a defendant is entitled to a lesser included offense instruction as a matter of due process, the nearly universal acceptance of the rule in both state and federal courts establishes the value to the defendant of this procedural safeguard."). At the time of petitioner's trial in 1987, it was well-established that, in Missouri, felony murder was not a lesser included offense of capital murder under the traditional "elements test". State v. Baker, 636 S.W.2d 902, 904-05 (Mo. banc 1982); State v. Goddard, 649 S.W.2d 882, 887 (Mo. banc 1983) (the jury is not instructed on felony-murder in a capital murder case unless felony-murder is separately charged). Nonetheless, the Missouri legislature specifically denominated felony murder as a lesser included offense of first degree murder. R.S.Mo. §§ 556.046 and 565.025.
On at least two occasions, the Eighth Circuit has addressed claims brought by habeas petitioners regarding failure to instruct on the lesser included offense of felony murder. On each occasion, the Eighth Circuit has denied the petitioner's claims, finding no breach of the principles set forth in Beck v. Alabama. In Driscoll v. Delo, 71 F.3d 701, 714 (8th Cir.1995),[27] the petitioner's jury was instructed on multiple options of capital murder, second degree murder and manslaughter. The petitioner asserted that in light of Beck v. Alabama his counsel was ineffective for failing to request an additional instruction on second degree felony murder. In denying the petitioner's claim, the Eighth Circuit held that the central concern of Beck v. Alabama was not implicated because the jury was instructed on both capital murder, second degree murder and manslaughter, thus they were not facing an "all-or-nothing" choice. Id. at 714-15. Similarly, in Kilgore v. Bowersox, 124 F.3d 985, 995 (8th Cir.1997), the trial court instructed the petitioner's jury on the offenses of capital murder and second-degree murder. The petitioner alleged error in the failure to instruct the jury on the additional offense of second-degree felony murder. The Eighth Circuit held that the petitioner could not show prejudice under Strickland because the petitioner's jury was not presented with an "all-or-nothing choice." Id. at 995.
In the present case, like in Driscoll and in Kilgore, the jury was given four choices: capital murder, murder second, manslaughter and acquittal. Deliberation is the distinguishing element of capital murder. Because the jury convicted petitioner of capital murder, there was no harm in the trial court's failure to sua sponte give felony murder instructions or in appellate counsel's failure to raise the issue on appeal. Petitioner was not denied his constitutional rights to equal protection or due process. Appellate counsel's performance in not raising this issue fell well within the bounds of reasonable performance and petitioner's claim of ineffective assistance of appellate counsel fails under Strickland. All relief request on Ground VI.F.1 is denied.

Ground VI.F.2.: Ineffective Assistance of Appellate Counsel by Failing to Raise Error of Trial Court in Incorrectly Instructing on the Burden of Proof Required For a Conviction.
Petitioner alleges that his appellate counsel was ineffective in failing to raise the issue of "the trial court's error of instructing the jury on the burden of proof required for *827 a conviction." Amended Pet., p. 87; Jury Instruction 4. Petitioner raised this claim of ineffective assistance of appellate counsel in his second motion to recall the mandate, thus the claim is not procedurally barred. Nave v. Delo, 62 F.3d at 1030.
The trial court gave the following instruction, which is at issue:
The charge of any offense is not evidence, and it creates no inference that any offense was committed or that the defendant is guilty of an offense.
The defendant is presumed to be innocent, unless and until, during your deliberations upon your verdict, you find him guilty. This presumption of innocence places upon the state the burden of proving beyond a reasonable doubt that the defendant is guilty.
A reasonable doubt is a doubt based upon reason and common sense after careful and impartial consideration of all the evidence in the case.
Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. The law does not require proof that overcomes every possible doubt. If, after your consideration of all the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you will find him guilty. If you are not so convinced, you must give him the benefit of the doubt and find him not guilty.
Pet.Exh. 21; Resp.Exh. B, p. 92. The constitutionality of this Missouri model criminal jury instruction, MAI-CR 3d 302.04, has repeatedly been upheld. State v. Chambers, 891 S.W.2d 93, 105 (Mo. banc 1994) (cases cited therein). Petitioner can show no prejudice resulting from his appellate counsel's failure to object to this instruction on appeal. Under the standard set forth in Strickland, the claim is denied. Moreover, as set forth in Murray v. Delo, 34 F.3d 1367, 1382 (8th Cir.1994), review of petitioner's claim that the instruction in question is unconstitutional is barred by Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). For all of the reasons set forth herein, this claim is denied.

Ground VI.G.: Petitioner's Post-Conviction Counsel's Representation of Loewe was a Conflict of Interest Which Deprived Petitioner of Due Process.
For his final claim, petitioner alleges that a federal public defender, Kevin Curran, conferred with him during the preparation for his Rule 29.15 hearing. Petitioner alleges that subsequently, Curran represented Kenneth Loewe at the hearing and advised Loewe to invoke his privilege against self-incrimination. Petitioner alleges that if Loewe had testified at the hearing on his Rule 29.15 motion, there is a reasonable likelihood that the court would have found petitioner's trial counsel ineffective for his failure to investigate Loewe, see supra claim VI.B.1.
Petitioner failed to raise this claim in state courts. Nonetheless, "an actual conflict of interest may constitute the cause and prejudice necessary to excuse a procedural default." Nave v. Delo, 62 F.3d at 1034. As in Nave, however, petitioner has failed to convince the Court that an actual conflict of interest exists. "In order to prevail, [petitioner] must show that `an actual conflict of interest adversely affected his lawyer's performance.'" Id. (citing Salam v. Lockhart, 874 F.2d 525, 527 (8th Cir.) (quoting Cuyler v. Sullivan, 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980))). Neither a possible conflict nor the appearance of impropriety are sufficient to demonstrate an actual conflict. Id.
The record reveals that Curran was appointed to represent Loewe at the hearing on petitioner's 29.15 motion and Loewe invoked his Fifth Amendment privilege. Resp. Exh.J., Vol. 1, pp. 284-86. However, as respondents point out, the record is wholly void of any evidence that Curran represented petitioner or conferred with petitioner during the preparation of petitioner's Rule 29.15 hearing, or at any time. In support of his contention that he conferred with Curran, petitioner points to the transcript from the hearing on the Rule 29.15 motion and Petitioner's Exhibit 6  excerpts from petitioner's deposition. Neither supports petitioner's claim that he conferred with Curran. At the hearing on his Rule 29.15 motion, petitioner *828 was represented by attorney Richard H. Sindel. Petitioner was not present at the hearing, but his deposition was taken in lieu of his appearance. Petitioner has presented no basis for excusing his procedural default, thus, the claim is denied.

VI. PETITIONER'S REQUEST FOR AN EVIDENTIARY HEARING
Previously, the Court denied petitioner's request for an evidentiary hearing and motion to reconsider the denial, subject to being reconsidered with the merits of the amended petition. No evidentiary hearing is necessary "when the issues raised in the petition can be resolved on the basis of the state court records." Reynolds v. Caspari, 974 F.2d 946, 947 (8th Cir.1992). A petitioner is entitled to an evidentiary hearing if he can show cause for his failure to develop facts in state-court proceedings and actual prejudice resulting from the failure, or if he can show that a fundamental miscarriage of justice would result from failure to hold a federal evidentiary hearing. Keeney v. Tamayo-Reyes, 504 U.S. at 12. Petitioner has failed to show that he did not have an opportunity to fully develop any of his claims in state court. Moreover, the Court can resolve each of petitioner's claims based on the state court records.
In support of his renewed request for an evidentiary hearing, petitioner has provided the Court with an affidavit of Thomas Coleman, which petitioner claims is exculpatory. Coleman attests, in part, that petitioner was not inside the van with Ramo, Broderick and Prater when it left City Sales and Salvage on the morning of September 17, 1980. Petitioner asserts that this affidavit supports his alibi defense and his claims that his conviction and death sentence are unconstitutional. Petitioner has not raised a habeas claim related to Thomas Coleman, but argues that Coleman's testimony is important because "(1) it further demonstrate's trial counsel's failure to investigate Petitioner's Defense; (2) it forms the foundation of an alibi defense for Petitioner, which was never prepared nor presented at Petitioner's trial; and (3) it is evidence of Petitioner's actual innocence in that it directly contradicts testimony given by John Ramo and Joseph Broderick at Petitioner's trial." Mem. in Support of Petitioner's Motion to Reconsider Denial of Petitioner's Motion for Evidentiary Hearing, p. 9. Coleman's affidavit does not constitute "newly discovered evidence." Petitioner has not shown that the evidence was not available to him at trial and could not have been discovered earlier through exercise of due diligence. Amrine v. Bowersox, 128 F.3d at 1230. Moreover, this belated claim falls far short of the showing of actual innocence that is required to meet a miscarriage of justice exception. Schlup v. Delo, 513 U.S. 298, 316, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). No evidentiary hearing is warranted on this issue.
Additionally, petitioner alleges that he has been made aware of new empirical studies which objectively demonstrate that his sentence is unconstitutionally disproportionate. Because the Court has denied petitioner's claim for relief based on his allegedly disproportionate sentence on the grounds that proportionality is unreviewable in a habeas proceeding, an evidentiary hearing on this claim is not warranted.

VII. PETITIONER'S REQUEST FOR A PSYCHIATRIC EXAMINATION AND COSTS
Pursuant to 18 U.S.C. § 3006A, petitioner filed an ex parte motion for leave to conduct a psychiatric examination and approval for costs. The Court previously denied the motion, subject to being reconsidered along with the merits of the amended petition. Petitioner asserts that a psychiatric examination is required to prove his claim of ineffective assistance of counsel based on the availability of a psychiatric defense and his claim regarding mitigation of punishment. The Court has carefully reconsidered the request and finds it to be without merit.

VIII. CONCLUSION
The Court having rejected each of petitioner's six grounds (containing over forty-two subclaims) asserted in support of the issuance of a writ of habeas corpus, the petition will be denied. After reconsideration, the *829 Court will also again deny petitioner's ex parte motion for leave to conduct a psychiatric examination and motion for an evidentiary hearing.
Accordingly,
IT IS HEREBY ORDERED that Michael Bowersox, the current Superintendent of the Potosi Correctional Center, is substituted in place of Paul K. Delo as a proper party respondent.
IT IS FURTHER ORDERED that, upon careful reconsideration, petitioner's ex parte motion for leave to conduct a psychiatric examination and approval of costs is again denied.
IT IS FURTHER ORDERED that, upon careful reconsideration, petitioner's motion for an evidentiary hearing is again denied.

JUDGMENT
Pursuant to the memorandum and order entered herein this day,
IT IS HEREBY ORDERED, ADJUDGED and DECREED that petitioner David Leisure's amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied.
IT IS FURTHER ORDERED, ADJUDGED and DECREED that a certificate of appealability is denied, subject to reconsideration by the United States Court of Appeals for the Eighth Circuit. Petitioner has failed to make a substantial showing of the denial of a constitutional right, and the Court is not persuaded that the issues raised in his petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.
IT IS FURTHER ORDERED, ADJUDGED and DECREED that the Clerk of the Court shall give immediate notice of this judgment, both by telephone and by the mailing of a copy thereof, to Michael Bowersox, the Superintendent of the Potosi Correctional Center in Mineral Point, Missouri; to Jeremiah "Jay" Nixon, Attorney General of the State of the Missouri; to Mel Carnahan, Governor of the State of Missouri; and to Duane Benton, Chief Justice of the Missouri Supreme Court.
NOTES
[1] Pursuant to Fed.R.Civ.P. 25(d), Michael Bowersox, the current Superintendent of the Potosi Correctional Center, is substituted in place of Paul K. Delo as a proper party respondent.
[2] On December 1, 1983, a superseding indictment was filed in federal court naming eight defendants. Petitioner was charged in four counts.
[3] Justice Robertson filed the majority opinion joined by Chief Justice Billings and Justices Donnelly, Rendlen and Higgins. Justice Blackmar concurred in the finding of guilt but dissented on the affirmance of the death sentence. Justice Welliver joined in Blackmar's opinion.
[4] The Fifth Amendment provides, in relevant part, that no person shall be "deprived of life, liberty, or property, without due process of law. ..." U.S. Const. amend. V.
[5] The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.
[6] The Fourteenth Amendment provides, in relevant part, that "nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.
[7] Section 565.035, R.S.Mo., states, in relevant part:

3. With regard to the sentence, the supreme court shall determine:
***
(3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime, the strength of the evidence and the defendant.
[8] During the penalty phase, the trial court admitted state's exhibits 51 and 52. Tr. Tran. Vol. X, pp. 8-11. The issue of the admission into evidence of state's exhibit 51, a photograph of Faheen's automobile after the explosion, is not before this Court.
[9] Rule 606 states, in relevant part:

(b) Inquiry into validity of verdict or indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.
Federal Rule of Evidence 1101(e) provides that the Federal Rules of Evidence apply to habeas corpus petitions filed in federal court under 28 U.S.C. § 2254.
[10] Although copies of state's exhibits 13 through 15 have not been provided to the Court as part of the record, the trial transcript reveals that the three exhibits were close-up photographs, each taken from a different angle, of the victim's body as it lay on the interstate highway. Tr. Tran. Vol. IV, pp. 59-67.
[11] The deferential Brecht harmless error standard applies because the state court determined that any constitutional error in the admission of the Faheen photograph was harmless. State v. Leisure, 749 S.W.2d at 379; Joubert v. Hopkins, 75 F.3d 1232, 1245 (8th Cir.1996).
[12] On the verdict form, the jury designated the following aggravating circumstances: (1) that petitioner, by murdering James Anthony Michaels, Sr., knowingly created a great risk of death to more than one person in a public area by means of a device which would normally be hazardous to the lives of more than one person; (2) that petitioner, as an agent or employee of Paul Leisure and at his direction, murdered James Anthony Michaels, Sr.; (3) that the murder of James Anthony Michaels, Sr., involved depravity of mind and that as a result thereof it was outrageously and wantonly vile, horrible and inhumane; (4) petitioner's federal RICO conviction. Tr. Tran. Vol. X, pp. 186-87.
[13] The Sixth Amendment provides, in relevant parts, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury ... and to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.
[14] The amendments to § 2254(d) enacted by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 do not apply in this case. Lindh v. Murphy, ___ U.S. ___, ___, 117 S.Ct. 2059, 2062, 138 L.Ed.2d 481 (1997). Section 2254(d) (1994) provided, in relevant part, that subject to specific exceptions, "a determination after a hearing on the merits of a factual issue, made by a State court ..., evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct. ..."
[15] Also before the Court are approximately thirty newspaper articles which were provided to the state court as an exhibit to petitioner's motion "to Adopt the Motion for Change of Venue previously filed in this Cause by John Paul Leisure." Resp.Exh. B, pp. 174-217. Most, if not all, of these additional articles appeared in St. Louis newspapers in the first seven months of 1986 or before.
[16] On March 26, 1987, at the hearing on petitioner's pretrial motions, Zvibleman stated that petitioner's name was on the front page of the newspaper on that day in connection with an article about Ray Flynn being found guilty of racketeering charges. Resp.Exh. A(1), pp. 12-13. This is the only evidence before the Court regarding publicity that occurred at or near the time of petitioner's trial.
[17] The Missouri Supreme court stated that eighty-one prospective jurors comprised the venirepanel. State v. Leisure, 749 S.W.2d at 376. An original venirepanel of 102 individuals was called and, subsequently, an additional panel of 18 individuals was called. Resp.Exh. B, pp. 11, 13; Tr.Tran. Vol. III, pp. 125, 242.
[18] The Court will deny petitioner's claim of ineffective assistance of counsel. See infra Ground VI.A.2.
[19] None of these four venirepersons sat on the petit jury; each was dismissed for cause. Resp. Exh. B, p. 127; Tr.Tran. Vol. III, pp. 112-13.
[20] Petitioner properly preserved his claim as to venireperson Latko.
[21] On direct appeal, petitioner raised this claim regarding eight venirepersons: Frehse, C. Fuller, Dallas, Holtmeyer, Blitt, Latko, Dewitt and Dixon. Resp.Exh. M, p. 13.
[22] The Court previously has set forth the entire instruction. See supra Ground IV.D.1.
[23] Petitioner does not dispute respondents' statement that Anthony Leisure's state trial began in May of 1987.
[24] Petitioner alleges that the state received this information in 1984 but never turned it over to petitioner's attorney; rather, petitioner obtained a copy of the confession and gave it to his trial attorney. Resp.Exh. J, pp. 176-77 (affidavit of W. Bassett). Petitioner has not brought a separate claim for habeas relief based on this Brady-type allegation and indeed, such a claim would fail because petitioner has shown no resulting prejudice.
[25] Although the claims are not clearly identified, petitioner also alleges that "Frances Michaels stated that he retired from his union position for health reasons" and James Michaels III was laid off from his union job because of money problems in the union. Petitioner contends that this evidence would have negated the prosecutor's assertion that petitioner's motive for murder was interference with union activities. To the extent that petitioner has asserted separate claims that his counsel was ineffective for failure to investigate and/or call these two witnesses at trial, such claims were not raised in the state court and are procedurally barred. Petitioner has not attempted to show cause and prejudice.
[26] In support of his claim, petitioner points to the affidavit of juror Denando. For reasons previously stated, the Court will not consider this affidavit. See supra discussion of Ground II.
[27] In support of his claim, petitioner relies upon the district court's decision in Driscoll v. Delo, which was subsequently reversed, in part, by the Eighth Circuit. Pet. Second Supp.Mem. to Trav. pp. 1-2; Driscoll v. Delo, 71 F.3d 701, 714 (8th Cir.1995) (reversing the district court's decision granting habeas relief on the petitioner's claim that his counsel was ineffective in failing to request a jury instruction on the lesser included offense of second degree felony murder).